Argued and submitted June 16, affirmed as
modified August 18, reconsideration denied October 2,
petition for review denied December 9, 1980 (290 Or 211)

# In the Matter of the Marriage of
## KATHRENS,
*Respondent,*
*and*
## KATHRENS,
*Appellant.*

## (No. D7705-06398, CA 13173)

615 P2d 1079

Robert E. Glasgow, Portland, argued the cause for appellant. With him on the briefs were Wall & Wall, Robert C. Wall, Marilyn Moylan Wall, and Glasgow, LaBarre & Kelley, Portland.

Jack L. Kennedy, Portland, argued the cause for respondent. With him on the brief were James W. McClurg, Allen Reel and Kennedy, King & McClurg, Portland.

Before Richardson, Presiding Judge, and Thornton and Campbell, Judges.

THORNTON, J.

**THORNTON, J.**

Husband appeals from the decree dissolving the marriage of the parties, assigning as error the following:

1) Failure of the trial court to consider testimony and other evidence tending to contradict values assigned to various assets of the parties which were stipulated at husband's deposition to be fair and accurate values of those assets for purposes of this proceeding;

2) Overvaluing the parties' net worth by failing to consider the loss of certain business accounts and the tax consequences of a sale of assets allegedly necessary to satisfy the large judgment awarded wife as her share of the marital property;

3) Awarding wife $5,000 per month as permanent spousal support;

4) Awarding wife the free use of an automobile for two years; and

5) Awarding wife attorney fees in the amount of $38,306.02.

GENERAL BACKGROUND

The parties were married for nearly 30 years. At the time of the marriage neither party had any substantial assets. Husband was then employed as the manager of Terminal Transfer, Inc., a sizeable general trucking and warehousing operation which, by the time of trial, the parties had acquired. Through thrift, industriousness and the business acumen of husband, who handled all of the parties' financial matters, at the time of this proceeding the parties were principal owners of several large corporations and had accumulated assets of roughly $5,000,000.

Both parties were in their late fifties at the time of trial. They have one child surviving,

Nancie, who was 25 at the time of trial and was self-supporting. Wife had once done general office work, but devoted the bulk of her time during the marriage to the role of mother and homemaker and has not worked since the marriage. The health of both is somewhat impaired; wife suffers from a back problem and high blood pressure, and husband suffered an eye injury in 1974, which causes headaches and hand tremors and makes it difficult for him to conduct his affairs as he had formerly.

Trial of this proceeding required 12 days and generated a voluminous record of testimony and exhibits. The trial court proceeded to make a roughly equal distribution of the assets and structured the decree in a manner ostensibly aimed at maximizing the tax and business advantages of both parties. Husband was awarded all the business and investment assets, real property, the family home and furnishings and was charged with all the debts and contingent liabilities (loan guarantees) associated therewith. Wife was awarded the parties' beach house in which she had been living during the separation, the furnishings of that residence, the use of a car through husband's leasing corporation for two years, $5,000 per month in permanent spousal support, a judgment against husband secured by a lien or 50 percent of the stock held by husband in the principal corporations in the amount of $2,394,835, and attorney fees totaling $38,306.02. The judgment is payable as follows: a) one quarter is due on December 31, 1982, to enable husband to regulate his cash flow and pay off the balance of a $1,000,000 guaranty on which he became liable; b) the balance is payable in quarterly installments terminating in September, 1988; and c) the entire amount is subject to interest at 6 percent payable quarterly on the unpaid balance beginning in March, 1979.

THE PROPERTY DIVISION

A. *The Stipulation*

Husband's first contention is that the court erred in failing to consider evidence which would tend

to vary the values of certain assets established by stipulation at husband's deposition. These values were placed on the parties' assets in their financial statement dated December 31, 1977, which was used by husband for securing loans for his businesses. The trial court found that, at the time of the deposition in August, 1978, husband was represented by competent counsel and did stipulate to use of the values contained in the statement for purposes of the dissolution proceeding. He further found there was no mistake made at the time. He held that the stipulation conclusively established the values of those assets insofar as they related to events occurring prior to the stipulation. He stated, however, that he would narrowly construe the stipulation and consider any developments, including tax consequences of the sale of any of the assets, which occurred after that date.

■     We conclude that the approach taken by the trial court was correct. A stipulation validly entered into is binding as a judicial admission as to facts contained therein. *Morey, Administratrix, v. Redifer,* 204 Or 194, 214, 264 P2d 418, 282 P2d 1062 (1955); 73 Am Jur 2d, Stipulations § 8 (1974). *See also Davis v. Brown,* 280 Or 561, 564, 571 P2d 912 (1977).

■     Husband argues that ORS 107.105(1)(e), which requires that the property division be "just and proper in all circumstances," mandates that a trial court consider any evidence of value regardless of whether it tends to contradict stipulated values. He cites us to *Mollier and Mollier,* 33 Or App 575, 577 P2d 94 (1978), and *Bach and Bach,* 27 Or App 411, 555 P2d 1264 (1976). In *Mollier,* we affirmed the trial court's rejection of a property settlement agreement which provided that the family home should go to the party that received custody of the children subject to an interest in the other party of one-half the equity. We noted that special circumstances (i.e., the wife's serious drinking problem) might later require a change of custody and justified an award of the house

to both parties as tenants in common. 33 Or App at 577-78. In *Bach,* we upheld modification of a property settlement agreement which increased the husband's share of the marital estate from one-quarter of the assets to about one-half where the wife was in good health and had a good job and husband suffered from multiple sclerosis which threatened shortly to confine him to a wheelchair. 27 Or App at 414. Assuming that rules relating to judicial review of the fairness of property settlement agreements drawn by the parties are applicable to stipulations of fact, we find no such special circumstances in this case. Husband points out that the financial statement itself terms the values "estimated and unaudited." However, the estimates are those of husband himself. Further, he had the option to decline to stipulate to use of those values in this proceeding.

## B. *The Property Division*

■        This court has said that as a general rule, when marriages of long duration are dissolved, the parties are entitled to share in the marital assets equally. *Glatt and Glatt,* 41 Or App 615, 622, 598 P2d 1237 (1979). It appears from the record that the trial court found the parties' net worth to be in accordance with the figures contained in the financial statement, and that no adjustment was made for evidence introduced by the husband. The assets awarded to each party using these values amount to an approximately equal split of the marital estate. Given the fact that the parties had very little in the way of assets at the time they were married, the magnitude of the present estate and the fact that the wife has foregone employment opportunities during this 30-year marriage, we conclude that an equal distribution of the marital property was appropriate. ORS 107.105(1)(e).

Some of the evidence, introduced under the rule by husband, served only to call into question the validity of the values assigned to various assets in the financial statement or the manner in which those

[828]

values were determined. In view of our holding that the stipulation was binding, this evidence was properly excluded. Of husband's remaining contentions, two merit discussion: 1) the value assigned to one of husband's corporations, General Leasing, Inc., was too high because it failed to take into account the actual and anticipated loss of several of its major accounts, and 2) the values used by the trial court were in general too high because they were not adjusted for the tax consequences to husband of a sale of those assets necessary to satisfy the judgment which would result in realization of capital gain on the appreciated value of the property.

■ General Leasing, Inc., leases trucks to other businesses for hauling their merchandise and furnishes everything except drivers and liability insurance. The stipulated value of husband's eight-ninths interest in this company was $1,878,479. However, according to the testimony of husband and others, including husband's expert appraiser witness, Mr. Olsen, this figure should be reduced for the actual and anticipated loss of several of the company's major accounts. The first loss was the Royal Beer Distributing lease which was terminated in February, 1978. Since this loss occurred prior to the stipulation in August, 1978, it is inadmissible to vary the stipulated figure.

■ The second loss testified to during the trial, and which occurred after the stipulation, was the termination of 41 percent of the Coast to Coast Hardware account. According to Mr. Olsen's testimony, loss of this portion of the account, coupled with the potential loss of the balance of the account in 1980, reduced the stipulated value of General Leasing by 15 percent or approximately $282,000. This loss should have been deducted from the value of General Leasing under the trial court's approach to the stipulation.

■ The remaining losses which husband claims should be taken into account (the other 59 percent of

the Coast to Coast account scheduled for rebid in early 1980 and the Chrysler account), which together would reduce the net value of the corporation by 18 percent, had not occurred at the time of the hearing and were not certain to occur. Consequently, it would be too speculative to base an adjustment on these anticipated losses.

■ Similarly, it would require a large measure of speculation to make any alteration in the stipulated values for the tax consequences of selling any of husband's assets to discharge the judgment. There was no evidence as to which, if any, of the assets would have to be sold in order to comply with the terms of the decree. Husband's tax accountant testified on cross-examination that there were no present plans to liquidate any particular asset. The judgment was structured to minimize the burden on husband's cash flow and there was no substantial evidence that husband could not meet his obligation under the decree by other means. Further, the tax consequences of the sale of a particular asset were uncertain given recent changes in capital gain tax treatment, and could vary substantially depending upon the date of sale, along with the value of the asset itself. *See* Revenue Act of 1976, §§ 402, 421, 26 USC § 1202. In short, it would be speculative to reduce the value of an asset for tax consequences in the absence of showing that it would have to be sold at a given time. *Whitcomb and Whitcomb,* 39 Or App 763, 765-66, 593 P2d 1239, 40 Or App 583, 595 P2d 846, *rev den* 286 Or 745 (1979).

## SPOUSAL SUPPORT

■ An award of spousal support turns on consideration of a number of factors as applied to the facts of each case. ORS 107.105(1)(c);[1] *Frishkoff and Frishkoff,* 45 Or App 1033, 1044, 610 P2d 831 (1980). Such

---

[1] "(1) Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

an award cannot be considered without regard to the other provisions of the decree. *Grove and Grove,* 280 Or 341, 344, 571 P2d 477, 280 Or 769, 572 P2d 1320 (1977). The wife cites us to numerous cases in which these factors have been applied and resulted in awards of permanent spousal support. *See, e.g., Wargo and Wargo,* 27 Or App 619, 556 P2d 1388 (1976); *Hinsdale and Hinsdale,* 20 Or App 638, 532 P2d 1137, *rev den* (1975); *Bates and Bates,* 17 Or App 641, 523 P2d 579 (1974).

Were this a typical dissolution case, an award of permanent spousal support would no doubt be appropriate. The marriage lasted nearly 30 years during which the wife remained at home to care for the children and maintain the household. She was in her late fifties at the time of trial and had health problems. She has no marketable skills which could be

---

"* * * * *

"(c) For the support of a party, in gross or in instalments, or both, such amount of money for such period of time as it may be just and equitable for the other party to contribute. The court may approve, ratify and decree voluntary property settlement agreements providing for contribution to the support of a party. If requested by either party, the court shall make and set forth in its decree the findings of fact upon which its award or denial of support was based. In making such support order, the court shall consider the following matters:

"(A) The duration of the marriage;

"(B) The ages of the parties;

"(C) Their health and conditions;

"(D) Their work experience and earning capacities;

"(E) Their financial conditions, resources and property rights;

"(F) The provisions of the decree relating to custody of the minor children of the parties;

"(G) The ages, health and dependency conditions of the children of the parties, or either of them;

"(H) The need for maintenance, retraining or education to enable the spouse to become employable at suitable work or to enable the spouse to pursue career objectives; and

"(I) Such other matters as the court shall deem relevant." ORS 107.105(1)(c).

[831]

developed to ensure her a lifestyle "not overly dispro-portionate from the standard of living she enjoyed during the marriage." *Kitson and Kitson,* 17 Or App 648, 655, 523 P2d 575, *rev den* (1974).

█ █   This is not the typical case, however. Under the property division, as modified, the wife will receive over $2,000,000 in cash which can be invested at a substantial rate of return. Interest payable prior to the first installment on the judgment will exceed $135,000 per year. While this interest will be taxable to the wife, the principal amount of the judgment will not be. 26 USC § 71(c)(2). Aside from the $8,400 outstanding on the trust deed held on the residence awarded to wife, her award is free from any liability. Further, one of the paramount aims of the law in dissolution pro-ceedings is to disentangle the parties' affairs, insofar as possible, and to reduce or eliminate the dependence of one upon the other. *Cosby and Cosby,* 37 Or App 247, 250, 586 P2d 827 (1978). Return on investment of the judgment should permit a lifestyle akin to that wife enjoyed during the marriage. We therefore con-clude that the spousal support provision in the decree should be modified as follows:   a) $5,000 per month until the first installment of the judgment is paid, and b) $2,000 per month thereafter until the entire judg-ment is paid. Spousal support will terminate at that point. We consider the provision requiring husband to furnish an automobile to wife for two years as an adjunct of spousal support and perceive no reason to change it.

## ATTORNEY FEES

█   ORS 107.105(1)(h) provides for assessment of attorney fees and costs in dissolution proceedings which the court finds are "reasonably and necessarily incurred" by a party in prosecuting or defending a suit.

> "* * * The reasonableness of attorney fees is a question of fact to be determined in the light of the particular circumstances of the individual case. The factors to be considered include the nature of the pro-

ceeding, the novelty and difficulty of the issues involved, the time reasonably required for research, preparation and for trial, the skill and standing of counsel, the value of the interest involved, the result obtained and the other financial demands the decree places on the husband. *Colbath and Colbath,* 15 Or App 568, 516 P2d 763 (1973)." *Craig and Craig,* 30 Or App 419, 423, 567 P2d 141 (1977).

Entry of a judgment for attorney fees is in effect part of the property division and "the appellate court will refrain from modification of the decree unless persuaded the trial judge was clearly wrong." *Craig and Craig, supra,* 30 Or App at 423; *McCoy and McCoy,* 28 Or App 919, 562 P2d 207, 29 Or App 287, 563 P2d 738 (1977).

In applying the above-mentioned criteria to this case, we conclude the award was justified. As noted, trial consumed 12 days with two attorneys representing each of the parties. There can be no doubt about the magnitude of the wife's interest nor the difficult questions surrounding the valuation of several active businesses and other investments and cash flow problems associated with structuring and paying a judgment of this size. It further appears that a great deal of the preparation and trial time was devoted to testimony and cross-examination of witnesses in connection with the stipulation of the value of various assets. Much of this testimony was elicited under the rule and was, as we have held, inadmissible to vary the values contained in that stipulation. There was evidence that a reasonable attorney fee was $75,000. The award of attorney fees in this case is affirmed.

Summarizing, the decree is affirmed subject to the following modifications:

1) The judgment is reduced by $141,000 (one-half the decreased value of General Leasing, Inc.) to $2,253,835. One-quarter of the reduction shall be deducted from the initial installment due December 31, 1982. The balance shall be applied to reduce *pro rata* the subsequent installments.

2) Spousal support is $5,000 per month until the first installment is paid and is thereafter reduced to $2,000 per month until the entire judgment is paid, at which time it will terminate.

Affirmed as modified. No costs to either party.