Argued and submitted September 11, 1981, modified; remanded for reconsideration; as modified, affirmed February 8, reconsideration denied March 11, petition for review allowed May 11, 1982 (293 Or 146)

In the Matter of the Marriage of

JENKS,

*Appellant - Cross-Respondent,*

*and*

JENKS,

*Respondent - Cross-Appellant.*

(No. 80-1581, CA A20529)

640 P2d 1032

J. W. Walton, Corvallis, argued the cause for appellant - cross-respondent. With him on the briefs was Ringo, Walton, Eves & Gardner, P.C., Corvallis.

Michael F. McClain, Corvallis, argued the cause for respondent - cross-appellant. On the brief was McClain & Brown, Corvallis.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

In his appeal from a dissolution decree, husband maintains that the trial court erred in awarding wife the family home and requiring him to pay $300 per month spousal support for 10 years and $500 per month total child support. Wife cross-appeals, contending that it was error to award joint custody of the parties' minor children and to limit the location of the children's permanent residence.

The decree ended the 13-year marriage of husband, age 34, and wife, age 33. The parties have four children, who were ages 12, 11, 5 and 3 at the time of the hearing. Husband has a college degree in business administration, and wife, a high school graduate, some years ago completed a five-month course of training to be a dental assistant.

Husband is vice-president of Jenks-White Seed Company, a closely held family corporation. In 1979, he received a salary of $21,500, a bonus of $1,500, and $2,700 in Naval Reserve pay.[1] After two and one-half more years of Naval Reserve duty, he will qualify for retirement benefits (which will mature when he reaches 60) of about $350 per month. He also has a vested but unmatured interest in the company's retirement plan. Except for the first year of the marriage, wife has not worked outside the home.

The parties began their marriage with no substantial assets. In 1973, they moved into a dilapidated farmhouse owned by husband's father and grandmother that had "blackberry vines in the stairways and rats in the attic." It was built in 1852 and had always been in husband's family. In 1974, the house and 10 adjoining acres were deeded to husband as a gift from his father and grandmother. The next year, the grandmother deeded husband an additional 67 acres of land. These properties are held in husband's name alone.[2] In 1977, the house and the

---

[1] Husband testified that he nets about $90 a month from the Navy and $700 for his annual two-week active duty. Wife calculated his Naval Reserve pay to be $2,486. Our examination of the record shows that the gross amount was approximately $2,700 in 1979.

[2] Wife contends the gifts were to the family. The deposition of husband's grandmother supports her contention. Husband's stepmother testified to the contrary, and the deeds are in husband's name only.

77 acres were mortgaged in order to remodel the farmhouse and to purchase an additional 97 acres from husband's stepmother. The loan was taken in both parties' names, and title to the new acreage is held by husband and wife jointly. The balance on the loan at the time of the hearing was $122,430.57, with annual payments of about $10,450. One hundred sixty-four acres of the property are rented out at $40 per acre, and the income has been applied to the mortgage, leaving a net difference of about $350 payable each month on the mortgage.

The trial court awarded wife the home and 10 acres, valued at $158,480, a savings account of $1,040, a 1978 Dodge, the household goods and furnishings, some personal property and antiques. Husband was awarded the remaining 164 acres of real property, valued at $287,000, a savings account of $4,200, a 1951 Chevrolet, a 1929 Plymouth, a boat, tools, and some personal property and antiques. He was also awarded bank stock worth between $3,960 and $4,300 and his remainder interest in 300 shares of the Jenks-White Seed Company.[3] Husband was ordered to make the mortgage payments on all of the real property and the payments on wife's car. Assuming no value attributable to the company's stock or husband's retirement plan, the result was an approximately equal division of the property.[4]

The court also awarded the parties joint custody of their children with "residential custody" to mother and, as a condition of mother's custody, required that she maintain residence in Linn or Benton counties. Husband was ordered to pay $300 per month spousal support for 10 years and $125 per child per month child support and to maintain medical and dental insurance for the children.

---

[3] Husband placed no value on his remainder interest, characterizing it as an "expectancy interest." He inherited from his father "any" remainder interest the latter had in the stock. His father had held the stock as trustee, subject to the right of husband's grandmother to the income under the will of husband's grandfather. Because husband testified that when his 90-year-old grandmother dies he becomes the owner of the shares, we conclude that his interest was more than a mere expectancy. Wife estimates the value of the stock to be $45,000. Husband testified it was $37 per share. The trial court accorded the stock no value.

[4] Wife does not challenge the property distribution.

## PROPERTY DIVISION

■ Husband contends that, in light of the court's requirement that he make monthly spousal and child support payments in addition to the mortgage payments on the farmhouse, the award to wife of the house and surrounding 10 acres was inequitable. While it may in practice be difficult to separate property division and support provisions in fashioning an equitable settlement of the parties' affairs, *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977),

> "[f]rom an analytical point of view, however, the property division should, when possible, be determined independent of spousal support, considering above all the parties' contributions to acquisition of their assets. Overall equity of the dissolution can thereafter be best achieved by allowing or disallowing spousal support in light of the parties' respective property rights and any continuing need of a party. *See Kathrens and Kathrens,* 47 Or App 823, 615 P2d 1079, *rev den* (1980) * * * ; ORS 107.105(1)(c)(E)(H)." (Footnote omitted.) *Engle and Engle,* 52 Or App 561, 572, 629 P2d 397 (1981).

■ As a general rule, when marriages of long duration are dissolved, the parties should share equally in the division of the marital assets. *Kathrens and Kathrens,* 47 Or App 823, 828, 615 P2d 1079, *rev den* 290 Or 211 (1980); *Glatt and Glatt,* 41 Or App 615, 622, 598 P2d 1237 (1979). The rule can also apply to a marriage that has lasted 13 years, a "significant period of time." *See Norris and Norris,* 51 Or App 43, 51, 624 P2d 636, *rev den* 291 Or 151 (1981). However, the rule is a general one, and the source of the family assets is a relevant factor in their division, though not necessarily dispositive. *Frishkoff and Frishkoff,* 45 Or App 1033, 610 P2d 831 (1980); *Sellers and Sellers,* 39 Or App 647, 593 P2d 1191, *modified* 41 Or App 13 (1979); *Pullen and Pullen,* 38 Or App 137, 140, 589 P2d 1145, *rev den* 286 Or 449 (1979). The mere fact that property was inherited by or given to one party does not prevent its division upon dissolution. *Cook and Cook,* 29 Or App 171, 174, 562 P2d 601, *modified* 280 Or 589, 572 P2d 312 (1977); *Dietz and Dietz,* 271 Or 445, 553 P2d 783 (1975); *Rinehart and Rinehart,* 26 Or App 513, 552 P2d 1346, *rev den* 276 Or 387 (1976); *see Beers and Beers,* 31 Or App 1273, 572 P2d

364 (1977); *see also, Warner and Warner,* 39 Or App 755, 593 P2d 1236, *rev den* 287 Or 1 (1979).

At trial, husband testified that the couple decided to make their home in his family's farmhouse

"* * * as we felt it was a good part of our heritage, our family, and I wanted our kids raised in the country."

He proposed at trial that the court award him all of the real property, including the family home, and that wife be allowed rent-free use of the home for 10 years.[5] He was willing to pay $450 per month total child support and to keep up the monthly $134 payments on wife's car. He further suggested that wife be awarded a judgment against him for $48,000, payable in 10 years, for wife's share of the equity in the jointly held 97 acres. Under that proposal, husband would be responsible for $360 monthly interest on the judgment. He made no proposal for spousal support.

On appeal, he proposes that, in lieu of the $48,000 judgment awarded to wife, she be allowed to retain her one-half interest in the 97 acres, subject to the requirement that she assume a proportionate share of the outstanding encumbrances on that property. Husband could then be given an option to purchase her share at the fair market value of $89,875, or the court could order him to purchase it.[6]

■ We do not agree with husband that, just because the farmhouse had been in his family for over 125 years and he considered it part of his family heritage, it was inappropriate to award the house to wife. In *Beers and Beers, supra,* we modified a dissolution decree to award

---

[5] The trial court understood that husband's proposal was for 15 years of rent-free use.

[6] Husband changed his original property division proposal because of its allegedly adverse tax consequences. However, between the time of the trial and oral argument, the legislature amended ORS 107.105(3) to provide that

"[u]pon the filing of the decree, the property division ordered shall be deemed effective for all purposes. This transfer by decree, which shall effect solely owned property transferred to the other spouse as well as community property in the same manner as would a declaration of a resulting trust in favor of the spouse to whom the property is awarded, shall not be deemed a taxable sale or exchange."

The amendments purport to apply to any transfer after October 4, 1977.

wife land which she had inherited and to which she had a sentimental attachment because she lived there as a child. 31 Or App at 1276. Here, the house was in a state of decrepitude when husband and wife undertook to make it habitable. It was their joint effort that made it so. We are not persuaded that the history of the house up to that time overcomes the fact that the parties jointly made it what it is today. Furthermore, it is the children's home.

■ We think that husband's proposals inadequately reflect wife's contributions. His proposal was, in essence, that which was rejected in *Beers and Beers, supra,* where the wife argued that the assets received as a result of gift or inheritance from her family, which made up most of the parties' aggregate assets, should have remained undivided and that the husband was entitled to only those assets acquired by the couple jointly. In rejecting this contention in *Beers,* we stated that the property division should reflect the husband's valuable contributions to the assets and that he was entitled to share in those assets. Here, wife was a homemaker in not only the usual sense but also in a literal sense: It was due to the parties' joint efforts that the dilapidated farmhouse became a $125,000 home. We affirm the property division.

## SPOUSAL AND CHILD SUPPORT

■ Although, according to husband's calculations, his monthly income exceeds the obligations imposed by the trial court by only $100, we do not find the amount of spousal support unduly burdensome.[7] Wife testified that

---

[7] We assume the following represents husband's calculations of the effect of the decree:

Income:
| | | |
|---|---|---|
| Net take home pay | $1309 | |
| Naval Reserve pay | 90 | |
| | | $1399 |

Obligations:
| | | |
|---|---|---|
| Child support | ($500) | |
| Spousal support | ( 300) | |
| Mortgage payment | ( 350) | |
| Wife's car payment | ( 134) | |
| | | (1284) |
| | Disposable income | $ 115 |

she could earn $4 an hour as a dental assistant, but her occupational training was eight or nine years ago, and she has not yet proved herself in the job market in an area that presently has a depressed economy. Husband is currently living rent-free in a house on 80 acres owned by his grandmother located within one mile of the family home, and he is supplied a company car for his personal use. Moreover, the monthly $134 obligation on wife's car is short-term, and he has some liquid assets with which to meet his present support obligations. We affirm the spousal support award.

Husband also argues that his monthly child support obligation of $500 should be reduced to $450. Because the trial court made no determination as to the needs of the children, we remand to the trial court for reconsideration of child support in light of *Smith v. Smith,* 290 Or 675, 626 P2d 341 (1981).

## CUSTODY PROVISION

■ In a letter to the parties' counsel, the trial court wrote:

> "The court has decided to have the decree provide for joint legal custody, with this understanding. The wife is to have exclusive physical custody of the children subject only to visitation rights, and the only reason for joint custody is strictly psychological. It was represented to the court that the children had some impression that their father had abandoned them, and a joint custody provision might allay their fears."

Thus, the custody award was only nominally joint. Exactly how it might allay fear of abandonment is far from clear.

---

From what we understand husband's proposal at trial to have been, the disposable income would not be significantly greater under it:

| | | |
|---|---|---|
| Income: | | $1399 |
| Obligations: | | |
| Child support | ($450) | |
| Interest payment* | ( 360) | |
| Mortgage payment | ( 350) | |
| Wife's car payment | ( 134) | |
| | | (1284) |
| | Disposable income | $ 105 |

* 9% on $48,000 judgment

The parties agree that wife should have physical custody of the children with reasonable visitation rights to father, and characterization of the arrangement as joint custody is clearly inappropriate. The term "joint custody" at least implies that the parties simultaneously and continually share rights and responsibilities. *Heinel and Kessel,* 55 Or App 275, 637 P2d 1313 (1981); *Clement and Clement,* 52 Or App 101, 627 P2d 1263, *rev den* 291 Or 368 (1981); *Murray and Musto,* 47 Or App 245,614 P2d 132, *rev den* 290 Or 1 (1980). We find no provision for sharing responsibility here.

We modify the decree to award custody of the children to wife. Because husband wishes to maintain a strong parental role and because he has encountered difficulties with visitation arrangements, it is appropriate that a visitation schedule be incorporated in the decree. We remand to the trial court for determination of a proper schedule.

■ Finally, wife argues that the provision of the decree that

"* * * [wife] be and hereby is required to maintain her permanent residence within Linn or Benton County so long as the minor children are residing with [her]"

places a burden on her that is not imposed upon other single parents. While that may be true, geographical restriction on custodial residence has been upheld so long as it is in the best interest of the child. *Meier and Meier,* 286 Or 437, 595 P2d 474 (1979). Moreover, the absence of an express restriction in an original decree does not prevent the court from subsequently imposing one, when the custodial parent seeks to remove the child. *Smith and Smith,* 290 Or 567, 624 P2d 114 (1981). Any move out of the area by the custodial parent would permit the best interests of the children to be put in issue. In view of the familial situation described in the record here and the property division, we will not delete that restriction from the decree.

We remand to the trial court for reconsideration of child support in light of *Smith v. Smith, supra,* and for establishment of a reasonable visitation schedule. As modified, the decree is affirmed. No costs to either party.