Argued and submitted November 3, 1981, reversed June 9, 1982

# In the Matter of the Marriage of

ENGLE,
*Petitioner/cross-respondent
on review,
and*
ENGLE,
*Respondent/cross-petitioner
on review,*

(No. D79-0274, CA 18436,
SC 27920, 27932)

646 P2d 20

J. W. Walton, Corvallis, argued the cause for petitioner/cross-respondent on review. With him on the petition and briefs was Ringo, Walton, Eves & Gardner, P.C., Corvallis.

Thomas Garrison, Roseburg, argued the cause for respondent/cross-petitioner on review. With him on the petition and the brief was Garrison & Garrison, Roseburg.

PETERSON, J.

Tanzer, J., dissenting opinion.

## PETERSON, J.

A husband and wife, after over 25 years of marriage, are divorcing. The value of their property is nearly two million dollars. The issues solely relate to the division of the property, and tax consequences thereof. The case involves consideration of the holding of *United States v. Davis*, 370 US 65, 82 S Ct 1190, 8 L Ed 2d 335 (1962), and amendments to ORS 107.105(1)(e), amendments which were enacted in response to the decision of the Court of Appeals in this case, and which are now applicable to this case. We granted review to consider whether a court-ordered transfer to the wife of the husband's separate property, property acquired after the marriage, was a partitioning of jointly held property.

*Davis* held that the transfer of separately owned appreciated property from one spouse to the other spouse pursuant to a divorce decree was a "sale or other disposition" of property under sections 61(a), 1001 and 1002 of the Internal Revenue Code of 1954. As a consequence, the transferring spouse was required to pay taxes on the capital gain realized at the time of transfer. The court reasoned that under the law of the domicile of the husband and wife the wife had "no interest—passive or active—over the management or disposition of her husband's personal property," and that the transaction did not "remotely reach the dignity of co-ownership" or "equate * * * with a division of property by co-owners." 370 US at 70-71. Recognizing that the "view may permit different tax treatment among the several states * * * [because] of substantive differences between community property and common-law systems," the court tersely observed that this was one of "the facts of life." 370 US at 71. *Davis* spawned a generation of litigation in both state and federal courts[1] and a substantial volume of commentary.[2]

In dividing the parties' real and personal property, the trial court awarded wife $450,000 in corporate stock

---

[1] Some of the cases are cited and discussed in the Court of Appeals opinion, 52 Or App at 568-571. Shepard's Supreme Court Citations lists scores of cases involving the *Davis* problem.

[2] See Note, 53 Or L Rev 544-556 (1974), for a partial list of law review articles discussing *Davis* and related cases.

which, though acquired after the marriage, was in the husband's sole name. Husband appealed, asserting that the property division should be revised because if the forced transfer were held to be a taxable event under *Davis,* he would be subject to an additional tax liability of approximately $142,000.[3]

The Court of Appeals held that the wife had little interest in the corporate stock, that she had no power to transfer the property by will or otherwise, and that "[a] transfer of separately owned, appreciated property pursuant to a decree of dissolution in Oregon most likely will result in taxable gain to the transferor." 52 Or App at 576. The Court of Appeals therefore remanded the case to the trial court "so that the judgment awarded wife may be calculated with due consideration for the tax consequences to husband." 52 Or App at 577.

The Court of Appeals handed down its opinion on May 26, 1981. We granted review on August 25, 1981. 291 Or 504. In the interim, the legislature passed and the governor signed 1981 Oregon Laws chapter 775, which, as will appear below, amends ORS 107.105 in a way that directly affects this case.

## THE 1981 AMENDMENTS TO ORS 107.105

In 1971, Oregon adopted a no-fault dissolution law, and the property division statute was changed to state:

"(1) Whenever a marriage is declared void or dissolved, the court has power further to decree as follows:

"* * * (e) For the division or other disposition between the parties of the real and personal property, or both, of either or both of the parties as may be just and proper in all the circumstances." Former ORS 107.105(1)(e); Or Laws 1971 ch 280, § 13.

The statute was amended in 1977 by the addition of two sentences. Or Laws 1977 ch 847, § 2. When this case

---

[3] The opinion of the Court of Appeals contains a detailed summary of the property divided. 52 Or App at 564-565. We note, in passing, that there is an unspoken echo of the husband's complaints that the *Davis* rule would subject him to an immediate tax obligation of $156,000, an echo which might legitimately issue from the wife's lips. If she takes the stock at the husband's basis, will the capital gains tax liability be imposed upon her when the stock is sold? What consideration should be given to her unspoken pejoration? This question has not been raised and need not be discussed further.

was tried and when it was decided in the Court of Appeals, ORS 107.105(1)(e) read as follows:

"(1) Whenever the court grants a decree of * * * dissolution of marriage * * * it has power further to decree as follows:

"* * * * *

"(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. The court shall view the contribution of a spouse as a homemaker in the contribution of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage * * *." ·

As stated above, ORS 107.105(1)(e) was amended in response to the Court of Appeals opinion.[4] As amended in 1981, it provides (bracketed material was deleted; new provisions are underlined):

---

[4] Legislator Margaret Hendriksen, in a meeting of the House Judiciary Committee, referred to the Court of Appeals decision as one having "very drastic tax consequences * * * on property divisions which had capital gain * * *." Accompanying the proposed amendment was a memorandum which read as follows:

"The proposed amendment to ORS 107.105(1)(e) is intended to clarify the effect of the prior amendment to that provision enacted by the 1977 Oregon Legislature. It was widely believed at that time that such amendment provided each spouse with rights in the marital assets rising to the dignity of co-ownership, which would then make a transfer of such assets pursuant to a dissolution of marriage not a taxable transfer under the doctrine set forth in *U.S. v. Davis,* 370 U.S. 65 (1962), whether such assets were jointly or separately held.

"However, the Oregon Court of Appeals, in *Engle v. Engle,* Case No. CA 18436, has recently held that, despite ORS 107.105(1)(e), the *Davis* doctrine is applicable in Oregon, which means that a transfer by one spouse of his or her separately-owned property to the other spouse, or in certain cases even an unequal division of jointly-owned property, in consideration of a relinquishment of the other spouse's marital rights, is a taxable transfer.

"The implication of this decision, if followed, is that Oregon residents who make transfers of property pursuant to a dissolution of marriage may incur a substantial capital gains tax on such transfer, yet receive no cash with which to pay the tax. This additional cash drain, at a time when the biggest financial problem usually faced by the parties is a lack of cash or other liquid assets, is an unnecessary and unwarranted burden on Oregon residents, particularly when the residents of community property states and certain common law states, such as Colorado and Oklahoma, have been held to be free from such tax.

"(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. The court shall [view] consider the contribution of a spouse as a homemaker [in the contribution] as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage[.], whether such property is jointly or separately held. Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of co-ownership, and a transfer of marital assets pursuant to a decree of annulment or dissolution of marriage or of separation entered on or after October 4, 1977, shall be considered a partitioning of jointly owned property. The court shall require full disclosure of all assets by the parties in arriving at a just property division. In arriving at a just and proper division of property, the court shall consider reasonable costs of sale of assets, taxes and any other costs reasonably anticipated by the parties." 1981 Or Laws ch 775, § 1.

Prior to the 1981 amendment, ORS 107.105(2) provided that "[i]n determining * * * the proper division of property * * * the court *may* consider evidence of the tax consequences on the parties of its proposed decree." (Emphasis added.) The 1981 amendments to ORS 107.105 did not change ORS 107.105(2), but added the concluding sentence of ORS 107.105(1)(e) that "[i]n arriving at a just

---

"Nor is the burden of this tax limited to the party making the transfer of property, for under ORS 107.105(1)(e), and the *Engle* decision itself, a court is to take the tax effect of such a transfer into account in making its division of property pursuant to a decree of dissolution of marriage.

"It is important to note that the enactment of this proposed revision will not provide an exemption from tax so much as a deferral. The potential taxable gain will remain in the property, and the tax will be payable when it is sold or otherwise disposed of in a taxable transaction. The purpose of this legislation is simply to avoid imposing the tax at the time the property is transferred in a property settlement pursuant to a dissolution of marriage.

"Finally, the reason that it is proposed that this legislation be retroactive to the effective date of Oregon Laws 1979, Ch. 847, is to reflect the fact that this is not intended to change prior law, but merely clarify what appeared to be the intent of the legislature at that time, and reverse the Oregon Court of Appeals' decision in *Engle vs. Engle.*"

and proper division of property, the court *shall* consider reasonable costs of sale of assets, *taxes* and any other costs reasonably anticipated by the parties." (Emphasis added.)

The 1981 amendment appears to require that courts, when appropriate, consider the tax consequences of property divisions.[5] Both the trial court and the Court of Appeals did so, as we now proceed to do.

Under *Davis,* whether the court-ordered transfer is to be viewed as a nontaxable division of property between two co-owners is determined by Oregon law. Whatever the law of Oregon was prior to the 1981 amendments to ORS 107.105(1)(e), this court must measure the trial court decree against the amended ORS 107.105(1)(e). The amended statute provides that the transfer "shall be considered a partitioning of jointly owned property" if the property is a "marital asset" (as that term is used in ORS 107.105(1)(e)).

## MEANING OF "MARITAL ASSET"

In this case the tax effect turns on whether the husband's corporate stock, which was acquired after the marriage and which has always been held in his name, is a "marital asset" under ORS 107.105(1)(e). Although the answer is not clearly apparent from the face of the statute, the legislative history suggests that such property is a marital asset.

The term "marital assets" is not defined in chapter 107 or elsewhere. It appears in the second sentence of ORS 107.105(1)(e) in connection with the requirement that the court consider "the contribution of a spouse as a homemaker." The legislative history concerning the precise meaning of the term "marital assets" is not as clear as it might be, particularly as it concerns property received by gift or inheritance, but the meaning is clear insofar as the issues in this case are concerned.

As stated above, ORS 107.105(1)(e) was amended in 1977, HB 2471, Or Laws 1977, ch 847, § 2. The amendments resulted, at least in part, from a resolution of the

---

[5] We assume that the legislature intended that the consideration of tax consequences be made upon request, and where appropriate, after presentation of relevant evidence.

Oregon Women's Political Caucus Convention recommending that the role of the homemaker be recognized as an economically valuable contribution. to the acquisition of assets during marriage. One intent underlying the 1977 amendments is the recognition that although money for the acquisition of property during the marriage often results from the labors of the employed spouse, the efforts of the nonwage-earning homemaker are also an important contribution toward the acquisition of property during the marriage. The end result of the 1977 amendments was the addition of two sentences following the first sentence of ORS 107.105(1)(e). The first of the two sentences referred to required the court to "view the contribution of a spouse as a homemaker in the contribution of marital assets." The second added sentence provided for a rebuttable presumption "that both spouses have contributed equally to the acquisition of property during their marriage."

The first sentence of the amendment uses the phrase "the contribution of marital assets" and the second sentence of the amendment speaks of "the acquisition of property during their marriage." Although there may be some question whether property received during the marriage by a spouse by way of gift or inheritance is intended to be included within either phrase (a question which we need not and do not decide in this case),[6] there is no doubt that both phrases intended to include most other property acquired by one or both spouses during the marriage. The amendment recognized the fact that nonearning spouses who maintain the home, do the cooking and cleaning and raise the children, also contribute to the acquisition of property in a tangible, substantial way. The result was the creation of the rebuttable presumption of an equal contribution. Thus, when property is acquired with monies earned by a working spouse, whether title is taken in the husband's name, the wife's name, or in both names, the acquisition of the property would be treated, at least

---

[6] *Pierson and Pierson*, affirmed by the Court of Appeals without opinion on January 6, 1982, 55 Or App 534, and argued May 4, 1982, in this court, currently under advisement, involves questions relating to the division of property inherited by a spouse during the marriage. *Jenks and Jenks*, 55 Or App 824, 640 P2d 1032 (1982), *review allowed*, 293 Or 146 (1982), is set for hearing on June 7, 1982. *Jenks* involves division of property given to a spouse during the marriage.

presumptively, as having resulted from the equal efforts of the spouses. As respects property so acquired, the legislative history indicates that the meaning of the term "marital assets," contained in the second sentence of ORS 107.105(1)(e), and the meaning of the term "property," contained in the third sentence, are identical.

For tax or other reasons, marital partners may choose to acquire property and take title in the name of either or both, as joint tenants, tenants in common, tenants by the entirety, with or without rights of survivorship, or otherwise. The "homemaker contribution" sentence of ORS 107.105(1)(e) was intended to recognize the participation of the nonworking homemaker spouse, whose efforts contribute to the acquisition of property in numerous tangible and intangible ways, and to minimize the effect of the state of title of an asset acquired after marriage, so far as the division of property is concerned. The term "marital assets," as used in the second sentence of ORS 107.105(1)(e), was intended to include property such as the corporate stock involved in this case, where the stock was acquired during the marriage other than by gift or inheritance or other than in exchange for property which was received by gift or inheritance.[7]

---

[7] *Compare* Section 307(b) and (c) of the Uniform Marriage and Divorce Act, as originally promulgated. It provided:

"(b) For purposes of this Act only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:

"(1) property acquired by gift, bequest, devise, or descent;

"(2) property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

"(3) property acquired by a spouse after a decree of legal separation;

"(4) property excluded by valid agreement of the parties; and

"(5) the increase in value of property acquired prior to the marriage.

"(c) All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (b)."

The second sentence of ORS 107.105(1)(e), which first appeared in 1977, is drawn from section 307 of the Uniform Marriage and Divorce Act.

Our role in this case is an unusual one. We are not sitting as a tax court. The ultimate federal tax consequences of the court-ordered decree in this case would be determinable in a federal tribunal. But federal courts, under *Davis,* "must * * * look to the state law controlling the disposition of the property to determine the exact nature of that disposition for [federal] tax characteristic purposes." *Collins v. C.I.R.,* 388 F2d 353, 355 (10th Cir 1968). Pursuant to ORS 107.105(1)(e) and 107.105(2), we consider evidence of the probable federal tax consequences of the decree. We first examine the four Collins cases (referred to herein as Collins I, II, III and IV) to ascertain the probable federal tax consequences of the trial court decree. In *Collins I (Collins v. C.I.R.,* 388 F2d 353 (10th Cir 1968)), an Oklahoma husband and wife entered into a divorce property settlement agreement pursuant to which the husband transferred his separately-owned corporate stock to the wife. At the time of the transfer, the value of the stock was greater than its cost. Husband reported no gain resulting from the stock transfer. The Tax Court of the United States held that the transfer of the stock was, for federal income tax purposes, a disposition of property and a taxable transaction, 26 USC §§ 1001(c), 1002,[8] and a deficiency was assessed against the husband. The husband appealed, claiming that under 12 O.S. 1961, § 1278,[9] the

---

[8] Internal Revenue Code of 1954, §§ 1001, 1002:

Section 1001(c) states:

"In the case of a sale or exchange of property, the extent to which the gain or loss determined under this section shall be recognized for purposes of this subtitle shall be determined under section 1002."

Section 1002 states:

"Except as otherwise provided in this subtitle, on the sale or exchange of property the entire amount of the gain or loss, determined under section 1001, shall be recognized."

Section 1002 has been repealed; 26 USC § 1001(c) now provides:

"(c) Recognition of gain or loss.—Except as otherwise provided in this subtitle, the entire amount of the gain or loss, determined under this section, on the sale or exchange of property shall be recognized."

[9] The pertinent part is as follows:

"As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether title thereto be in either or both of said parties, the court shall make such division between the

transfer of the stock was a division of jointly owned property and therefore no tax was due. The Court of Appeals affirmed the Tax Court, holding that because the traditional elements of co-ownership were lacking—the wife had no rights to transfer, control or bequeath the husband's stock—capital gain was realized when the transfer was made. 388 F2d at 355-356.

Collins I was decided in January, 1968. In October, 1968, the Supreme Court of Oklahoma decided Collins II (*Collins v. Oklahoma Tax Commission,* 446 P2d 290 (Okla 1968)), which involved virtually the same question, albeit under Oklahoma state tax law. The Oklahoma Supreme Court held that the wife's interest in the corporate stock under O.S. 1961, § 1278, was "a species of common ownership."

"The nature of the wife's interest is similar in conception to community property of community property states, and is regarded as held by a species of common ownership. The fact record title is in the husband by reason of conveyance or contract does not destroy such joint ownership, since the plain language of the statute precludes such requirement. Thompson v. Thompson, 70 Okl. 207, 173 P. 1037. The purpose to be accomplished by equitable division is a complete severance of common title, so the portion awarded each is free from claims or domination of the other. Kupka v. Kupka, 190 Okl. 392, 124 P.2d 389. The nature of the estate subject to division is not a matter of judicial discretion. Williams v. Williams, Okl., 428 P.2d 218. Although one spouse brings separate property to the marriage, enchanced value resulting from joint efforts, skill or funds of both working together constitutes jointly acquired property subject to division. * * *." 446 P2d at 295.

Accordingly, the court held that the transfer resulted in no taxable gain to the husband.

Collins III. The husband, after losing in the Tenth Circuit in Collins I, filed a petition for a writ of certiorari in the Supreme Court. After the Supreme Court was

---

parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof."

advised of the Oklahoma Supreme Court decision in Collins II, it summarily vacated the judgment of the Tenth Circuit and remanded "for further consideration in light of the opinion of the Supreme Court of Oklahoma in *Collins v. Oklahoma Tax Comm'n,* 446 P2d 290." *Collins v. Commissioner,* 393 US 215, 89 S Ct 388, 21 L Ed 2d 355 (1968).

On remand, in Collins IV, *Collins v. C.I.R.,* 412 F2d 211 (10th Cir 1969), the Court of Appeals held that "[h]aving the benefit of an interpretation of state law on this very point, we must conclude that the stock transfer operated merely to finalize the extent of the wife's vested interest in property she and her husband held under 'a species of common ownership.' " 412 F2d at 212.

The opinion concluded:

"In sum, we look to the law of the state, as the Supreme Court did in Davis and as this court did in Pulliam v. C.I.R., 329 F.2d 97 (1964), and conclude that the transfer of stock was a nontaxable division of property between co-owners." 412 F2d at 212.

■ ■ The legislative history of ORS 107.105(1)(e) reflects legislative awareness of the Collins cases and similar cases from other jurisdictions, and a desire to achieve the same result. The words used in the amending language—"a species of co-ownership"—is virtually identical to the language in the Collins II and Collins IV opinions. Our decision, based upon the evidence in this case, the applicable federal statutes, the four Collins cases discussed above, other caselaw discussed in the Court of Appeals opinion, *see* 52 Or App at 568-571, and the 1981 amendments to ORS 107.105(1)(e) is that whatever the nature of the spouse's interest in a separately held "marital asset" prior to the filing of a petition for dissolution, the statute compels this conclusion:

"* * * Subsequent to the filing of a petition for * * * dissolution * * *

"[1]  the rights of the parties in the marital assets shall be considered a species of co-ownership, and

"[2]  a transfer of marital assets pursuant to a decree of dissolution * * * shall be considered a partitioning of jointly owned property." ORS 107.105(1)(e).

The statute is clear and its mandate binds this court. We must hold that upon the filing of the complaint, the interest of the parties is as set forth in the statute—there exists "a species of co-ownership."[10] The precise nature of the "species of co-ownership" is not defined in the statute. Whatever its extent, we believe that the co-ownership interests created by the statute are such that an appropriate federal tax tribunal would hold that the court-ordered disposition, for federal tax purposes, is in the nature of a nontaxable division of property jointly acquired during the marriage, and that the transferring spouse would not be liable for the payment of taxable gain realized at the time of transfer.[11]

## CONCLUSION

It is apparent that the Court of Appeals remanded the case because of its conclusion that the trial court decree would result in taxable gain to the husband. Because of the later legislation and the decision of this court that the corporate stock is a "marital asset," that reason for remand no longer exists. The property division of the trial court, in light of the 1981 amendments to ORS 107.105(1)(e) and the holding of this court, impresses us as being fair. In a long term marriage in which the parties' properties were acquired during the marriage, the parties should separate on as equal a basis as possible. *See Grove and Grove,* 280 Or 341, 349, 571 P2d 477 (1977). Here, the marriage was long term, and although the husband received the "long half" of the parties' assets, much of the property had been the husband's prior to the marriage, and therefore the division is not unfair.

---

[10] The Court of Appeals, in its opinion (52 Or App at 573-576) carefully analyzed the nature of the parties' property rights in such property prior to enactment of the amendment and concluded that the nonowner spouse's claim to the other spouse's separately-held property was "* * * in the nature of a personal claim," an "equitable right to share in the marital estate." The court therefore concluded that "[a] transfer of separately owned, appreciated property pursuant to a decree of dissolution in Oregon most likely will result in taxable gain to the transferor." 52 Or App at 576. In light of the amendment, that holding no longer obtains.

[11] We express no opinion as to the nature of the spouse's property interest in separately held property prior to the filing of a petition for dissolution, or if the petition does not terminate in a decree of dissolution, or as to the necessity that the "nonowner" spouse join in the transfer of title of such property after a petition for dissolution is filed.

The trial judge recognized the difficulty of obtaining a complete separation of assets. Although a property division achieving a complete disentanglement of the parties' affairs is preferred, *Haguewood and Haguewood,* 292 Or 197, 207, 638 P2d 1135 (1981), *see also Slauson and Slauson,* 29 Or App 177, 183-184, 562 P2d 604 (1977), because of the unique facts of this case, we believe that the trial court did about as well as can be done to divide the parties' assets. Unfortunately, complete disentanglement was not readily possible. We therefore reverse the Court of Appeals and reinstate the decree of the trial court.

Tanzer, J., filed a dissenting opinion in which Campbell, J., joins.

**TANZER, J.,** dissenting.

I dissent. The 1981 amendments to ORS 107.105(1)(e) appear to be a legislative attempt to secure the tax consequences of community property without enacting the substance of community property. All that is enacted are labels intended to sound as if they describe interests, *e.g.,* "shall be considered a species of co-ownership." As the majority recognizes, we are not an authoritative court on issues of federal tax laws. I predict that the United States Supreme Court, if presented with this issue, would look through the statutory labels to the actual ownership interests and conclude that a transfer of separately owned, appreciated property in Oregon is a taxable event despite the vague, indefinite substantive language of the 1981 amendments. In support of this conclusion, I rely upon the excellent opinion by Judge Young for the Court of Appeals.

Campbell, J., joins in this dissent.