THEODORE A. SUNDIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sundin v. Commissioner
Docket No. 7322-84.
United States Tax Court
T.C. Memo 1985-579; 1985 Tax Ct. Memo LEXIS 57; 50 T.C.M. (CCH) 1503; T.C.M. (RIA) 85579; November 26, 1985. Theodore A. Sundin, pro se. Robert B. Misner, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined deficiencies in petitioner's Federal income taxes of $862 and $1,643 for taxable years 1980 and 1981, respectively. The issues for decision are: (1) whether petitioner realized a long-term capital loss as a result of the transfer of property pursuant to a divorce settlement in 1977; and (2) if petitioner did realize a loss, whether recognition of such loss is prohibited under section 267. [1]
*58 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits thereto are incorporated herein by this reference. At the time the petition was filed in this case, petitioner resided in Lynn Haven, Florida. On April 28, 1962, petitioner married Judith A. Sundin. At that time, petitioner was employed by General Motors Corporation in Santa Barbara, California. Petitioner and Mrs. Sundin have two children, born in 1963 and 1965. In July of 1971, petitioner left his employment with General Motors and moved to Oregon with his wife and children. Petitioner purchased a ranch which he had his wife remodeled. In the course of remodeling, petitioner and Mrs. Sundin discovered that many items necessary to complete the project were unavailable and decided to open a business to supply such items. The capital used to start the business came from petitioner's equity in the family's former home in Santa Barbara and from an inheritance he received from his parents. The business, Paddington Station, was a joint venture. The participants were petitioner, Judith Sundin, and two other individuals. Petitioner and Judith Sundin were divorced *59 in 1977. On February 25, 1977, in contemplation of divorce, they executed a family settlement agreement which divided their marital estate. The agreement provided that Judith Sundin would receive assets valued at $125,568 (net of liabilities) and that petitioner would receive assets valued at $24,801 (net of liabilities). Among the assets allocated to Mrs. Sundin was an asset identified as "Paddington Station -- Joint Venture." This asset was not assigned a basis or a fair market value by petitioner and Mrs. Sundin at the time the agreement was executed. The Circuit Court of the State of Oregon for Jackson County granted petitioner and Mrs. Sundin a divorce on June 6, 1977. The family settlement agreement was ratified by the court and incorporated into the divorce decree. The divorce became final on August 6, 1977. In 1980, petitioner amended his tax return for 1977. [2] On his amended return, petitioner claimed a long-term capital loss of $15,311. Petitioner based his computation of the loss on one-half of the adjusted basis of the joint venture, or $15,311. Petitioner determined his basis in his share of the joint venture by using the capital account balances at the end *60 of 1976 and the price at which Mrs. Sundin, subsequent to the divorce, purchased the interests of the other joint venturers. Petitioner timely filed income tax returns for 1980 and 1981, on which he deducted $3,000 and $2,170, respectively, as long-term capital loss carryovers from the alleged 1977 loss. Respondent disallowed these deductions. OPINION The first issue for consideration is whether petitioner realized a loss pursuant to his divorce settlement in 1977. Petitioner claimed deductions for a long-term capital loss for property transferred pursuant to his divorce. *61 Respondent disallowed those deductions. Respondent's determinations are presumptively correct; petitioner bears the burden of proving entitlement to the claimed deductions. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The division of property incident to divorce can result in a taxable transaction. United States v. Davis,370 U.S. 65 (1962). When property is transferred from one spouse to the other in the context of a divorce proceeding, in exchange for the release of marital rights, the transfer is treated as a taxable exchange. The value of the release of marital rights is presumed to be equivalent to the fair market value of the property transferred. United States v. Davis,supra at 72. Thus, the spouse transferring the property will have a taxable gain if the fair market value of the property transferred exceeds the adjusted basis of such property, and a taxable loss if the adjusted basis exceeds the fair market value. Under Oregon law at the time of petitioner's divorce, a wife had a statutory right to an equitable share in the marital estate. Or Rev. Stat. § 107.105(1)(e) (1971); *62 Engle and Engle,52 Or. App. 561, 629 P.2d 397, 406 (1981), revd. 293 Or. 207, 646 P.2d 20 (1982). [3] If this right is satisfied in a divorce proceeding by the transfer of separately owned property of the husband, the tax consequences of the transfer are governed by Davis.Engle and Engle,supra at 406.
*63 On his amended income tax return for 1977, petitioner claimed a basis in his share of the joint venture of $15,311. He testified that this figure was derived from the joint venturers' capital accounts at the end of 1976 and from the amount Mrs. Sundin later paid to purchase the interests of the other two parties to the joint venture. He claimed that the amount realized in exchange for his interest was zero. Thus, his amended return reflected a long-term capital loss of $15,311. Under Oregon law at the time of petitioner's divorce, however, the amount realized by petitioner upon his spouse's release of her marital rights must be equal to the fair market value of the property be transferred. Petitioner's amount realized on the transaction at issue is the fair market value of the marital rights released by Mrs. Sundin. Under Davis, the value of Mrs. Sundin's marital rights is presumed to be equal to the fair market value of petitioner's share of the joint venture which he transferred to her pursuant to the divorce settlement. Thus, petitioner's gain or loss on this transaction will be determined by the difference between his adjusted basis and the fair market value of the *64 property transferred. Petitioner has offered no evidence indicating that the fair market value of his interest was less than his adjusted basis, thereby causing him to realize a loss on the transaction. In fact, he testified that the figure he used as his basis was equal to the amount paid to purchase the other joint venturers' interests shortly after the divorce. Therefore the fair market value and the adjusted basis of petitioner's interest were equal and he realized no gain or loss on the transaction. Petitioner argues that his position is supported by Robertson v. Commissioner,55 T.C. 862 (1971). In Robertson, the taxpayer sold his interest in a motel to his former wife at a loss during their divorce proceedings. This Court found that the taxpayer in Robertson had incurred a deductible loss in an arms-length transaction which, while it occurred simultaneously with his divorce, was bargained for separately. The transaction which resulted in a deductible loss was not a part of the property settlement between the parties to the divorce. In the instant case, however, the transaction which petitioner claims resulted in a taxable loss took place in the *65 context of the divorce proceedings. There was no separate consideration for the transfer of petitioner's share of the Paddington Station joint venture. Petitioner's reliance on Robertson is misplaced. Petitioner also argues that Davis should not be applied in the instant case because his former wife had a continuing source of income and therefore did not have a right to alimony which she surrendered in exchange for property. Under Oregon law, however, the division of property and the right to support are considered independently in a divorce proceeding. Engle and Engle,supra at 404. A transfer of property pursuant to a divorce is analogous to the satisfaction of an independent legal obligation and is not determined by a party's need for support. Engle and Engle,supra. Thus, petitioner's argument that his wife would not have been entitled to alimony is irrelevant to the consequences of a transfer of property pursuant to divorce under Oregon law. Because of our finding that petitioner did not realize a loss on the transfer of his share of the Paddington Station joint venture, we need not address the issue of whether recognition of such loss would be prohibited *66 by section 267. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years here at issue, and all rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Petitioner also filed amended returns for 1978 and 1979, on which he claimed adjustments to tax based on carryovers of the alleged 1977 loss. These claims were disallowed by respondent. In his petition, petitioner requested that this Court redetermine his tax liabilities for 1977, 1978 and 1979, as well as for 1980 and 1981. Respondent filed a Motion to Dismiss for Lack of Jurisdiction as to taxable years 1977, 1978 and 1979. This motion was granted. Thus, although the result in this case will be determined by the characterization of a 1977 transaction, the only years before us are 1980 and 1981.↩
3. Subsequent to the decision in Engle and Engle, by the Oregon Court of Appeals, the property division statute was amended to prevent the application of United States v. Davis,370 U.S. 65 (1962), to transfers of property pursuant to divorce under Oregon law. Engle and Engle,293 Or. 207, 646 P.2d 20, 22 (1982). Because of the change in the statute, the Oregon Supreme Court reversed the decision of the Court of Appeals. The divorce in the instant case, however, took place prior to the effective date of the statutory amendment. The legislative history of the amendment indicates that the Oregon legislature did not intent to change prior law. Engle and Engle,293 Or. 207, 646 P.2d 20, 22 n.4. Thus, although the Court of Appeals decision was reversed, the reversal relates to a change in the law effective for divorces occurring after October 4, 1977, and does not affect the result in the instant case. Therefore, the decision of the Court of Appeals that Davis↩ applies to the division of property under Oregon law is controlling in this case.