Argued and submitted August 3, affirmed September 26, 1984

## STATE OF OREGON,
*Respondent,*

*v.*

## PAULA MARIE WEST,
*Appellant.*

(10-83-04258; CA A32345)

688 P2d 406

Ross M. Shepard, Public Defender, Eugene, argued the cause and filed the brief for appellant.

Jeff Bennett, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave

Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

In seeking reversal of her conviction for custodial interference in the first degree, ORS 163.257, defendant assigns as error the trial court's denial of her motion for judgment of acquittal. The thrust of her appeal is that, because she was a joint custodial parent of the child, it would be a "legal impossibility" for her to be found guilty of the specific charge. We disagree and affirm.

Defendant and her former husband, Larry West, were divorced on November 3, 1982. The decree awarded them joint custody of their two-year-old daughter. In addition, Mr. West was awarded physical custody of the child for the three days each week that he did not work and during his vacation periods; defendant was awarded physical custody for the remaining four days of each week. On May 3, 1983, Mr. West discussed with defendant the possibility of temporarily rescheduling their physical custody arrangement so the child could be with her mother the following Sunday, which was Mother's Day. Mr. West offered to pick up the child on Thursday, May 5, and return her on Sunday, May 8. Under their normal schedule, Mr. West was to have custody of the child from Friday through Monday. Mr. West tried unsuccessfully to contact defendant on Thursday, May 5, to confirm the schedule change. On May 6, the day he was normally scheduled to have custody of the child, he went to defendant's apartment and found it vacant. Even the furniture had been taken.

From May 6 to June 6, 1983, father was unable to locate defendant or his child. He received no communications from defendant during that time. He searched the local area personally and hired private investigators in New Mexico and Arizona to assist him in locating his child. Defendant was eventually arrested in Missouri. On June 6, 1983, father traveled to Missouri and regained physical custody of the child, who was then in the care of the Missouri Childrens' Services Division.

ORS 163.257 provides:

"(1)  A person commits the crime of custodial interference in the first degree if the person violates ORS 163.245 and:

"(a)   Causes the person taken, enticed or kept from the lawful custodian to be removed from the state; or

"(b)   Exposes that person to a substantial risk of illness or physical injury.

"* * * * *

"(3)   Custodial interference in the first degree is a Class B felony."

ORS 163.245 provides:

"(1)   A person commits the crime of custodial interference in the second degree if, knowing or having reason to know that the person has *no legal right to do so,* the person takes, entices or keeps another person from the other person's lawful custodian with intent to hold the other person permanently or for a protracted period." (Emphasis supplied.)

■ ■   The issue is whether the facts presented at trial demonstrate that all of the elements of the crime of custodial interference in the first degree have been proven. We find that they do and conclude that the trial court did not err in denying defendant's motion for judgment of acquittal and entering a verdict of guilty. Further, in the light of ORS 163.245, we reject defendant's assertion that her prosecution is precluded because of her legal status as a joint custodian.

Apparently, only one other appellate court has faced the question presented in this case. In *People v. Harrison,* 82 Ill App 3d 530, 402 NE2d 822, 824 (1980), the defendant had been convicted of abduction.[1] The parents' divorce decree awarded joint custody of the children to the defendant and his former wife and actual physical custody to the former with liberal visitations to the defendant. The defendant, while exercising his visitation rights, moved from Illinois to Mississippi. In affirming a conviction, the court observed that, under the joint custody laws of Illinois, joint custodial parents "have equal powers, rights and duties concerning the minor." The court thus concluded that "neither parent could remove the children without infringing on the powers, rights, and duties of the other." The case is persuasive authority.

---

[1] Illinois law defines joint custody as giving the parents "equal powers, rights, and duties concerning the minor." Ill. Rev. Stat. Ch 110 1/2, § 11-7 (1978). That statute is substantially identical to Oregon's, which provides that "the parties simultaneously and continuously share rights and responsibilities." *Jenks and Jenks,* 55 Or App 824, 832, 640 P2d 1032, *modified on other grounds,* 294 Or 236, 656 P2d 286 (1982).

■ Clearly, the primary focus of the statute is the protection of the rights and interests of the two victims of the offense: the child and the "lawful custodian" from whom the child is "taken, enticed or kept." The focus is not on the legal status of the one who does the taking, enticing or keeping from.

■ An award of "joint custody" means that both parties share the legal responsibility for parental decision-making. It is regarded by its proponents as a meaningful alternative to the win-lose psychology of the courtroom. Each parent is required to consult with the other regarding the important questions in the life of *their* child. As we stated in *Jenks and Jenks,* 55 Or App 824, 832, 640 P2d 1032, *modified on other grounds,* 294 Or 236, 656 P2d 286 (1982), the parents simultaneously and continuously share rights and responsibilities. Usually, the decree will specify how the actual physical custody of the child will be divided between the parties, as in this case.

When defendant removed the child from the state and failed to disclose her whereabouts, she was infringing on rights and responsibilities of the father. The emotional and financial costs suffered by him in trying to locate his daughter are among the primary evils that the statute was intended to deter. *See* Oregon Criminal Code of 1971, *Commentary* at 129 (1975). To interpret the statute as defendant suggests would clearly be contrary to the parental rights the statute was intended to protect. Because of the legal rights of the father, defendant cannot rely on her joint custodial status to justify the act of secreting her daughter.[2]

Affirmed.

---

[2] The legislative commentary is helpful in showing that it was not intended that a prosecution under the statute may be maintained only against one who has no right to custody. It states:

"However, the language adopted by the Commission is broad enough to encompass *any interference with lawful custody rights* by a person having *no legal right* to do so if there is an intent by that person to hold the person taken for a protracted period." Oregon Criminal Code of 1971, *Commentary* at 129 (1975). (Emphasis supplied.)