STATE of Delaware, Plaintiff,

v.

Gary TODD, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: Nov. 14, 1985.
Decided: Jan. 21, 1986.

Keith Trostle, Deputy Atty. Gen., Wilmington, for plaintiff.

Howard M. Berg, and Edwin A. Tos, Howard M. Berg and Associates, P.A., Wilmington, for defendant.

POPPITI, Judge.

This is the Court's decision on defendant's motion to dismiss the indictment in *State of Delaware v. Gary Todd.* The defendant has stipulated that the facts con-

tained in the indictment are true,[1] and for the purposes of deciding this motion, the Court also accepts the following as true.

The defendant, Gary Todd, (hereinafter "the father") lived with Elaine Porter (hereinafter "the mother") from May 1983 until August 1984. During that time Elaine became pregnant with the defendant's child and on March 18, 1984 gave birth to a daughter, Andrea. Although the mother and the father eventually moved apart, the mother still permitted the father to see his daughter who remained in the mother's custody.

On September 13, 1984, the parties arranged for the father to care for Andrea for the weekend. He agreed to bring Andrea back to the mother on September 18th. Instead, however, he took Andrea to Texas, where he was arrested on November 9, 1984.

As a result of these actions, the State has charged the father with felony interference with custody in violation of 11 *Del.C.* § 785. The statute provides in part that

[a] person is guilty of interference with custody when:

(1) Being a relative of a child less than 16 years old, intending to hold the child permanently or for a prolonged period of time and knowing that he has no legal right to do so, he takes or entices the child from his lawful custodian; ... [I]f the person who interferes with the custody of a child thereafter causes the removal of said child from Delaware, it is a class E felony.

11 *Del.C.* § 785.

It is the father's position that this Court must dismiss the indictment since the State cannot prove the element that the father had no legal right to take Andrea from her mother absent a valid custody order of which he would be in violation. He contends that as Andrea's natural father, absent a valid custody order to the contrary, his right of physical custody is equal to the mother's. In support of this position, he cites 13 *Del.C.* § 701(a) which defines the rights and responsibilities of parents and which provides in part that

[t]he father and mother are the joint natural custodians of their minor child and are equally charged with the child's support, care, nurture, welfare and education. Each has equal powers and duties with respect to such child, and neither has any right, or presumption of right or fitness, superior to the right of the other concerning such child's custody or any other matter affecting the child.

13 *Del.C.* § 701(a).

Simply stated, the father maintains that, since no valid custody order exists which delineates the rights and/or responsibilities of himself and the mother in the interest of their daughter Andrea, he, pursuant to the provisions of 13 *Del.C.* § 701(a), has the absolute right to exercise *de facto* sole legal and physical custody of Andrea to the exclusion of all rights and responsibilities of her mother. In a very real sense then, the father is arguing the rather anomalous result that the provisions of 13 *Del.C.* § 701, articulating the rights and responsibilities of *joint* natural custodians in terms of *"equal powers and duties with no presumption of right or fitness superior to the other,"* protects and sanctions actions initiated by one parent, without the benefit of a supporting court order, designed to frustrate and infringe on the co-equal rights and responsibilities of the other parent. In support of this position and in the absence of any Delaware case law on point the father cites the case of *Cline v. Superior Court,* Cal.App., 135 Cal.App.3d 943, 185 Cal.Rptr. 787 (1982). In that case the father who had unbeknownst to the mother

1. The indictment reads as follows:

Gary Todd, on or about the 16th day of September, 1984, in the County of New Castle, State of Delaware, being the natural father of Andrea Porter, a child less than 16 years of age, while intending to hold said child for a prolonged period of time and knowing that he had no legal right to do so, did take said child from her natural mother, Elaine Porter, and then fled the State of Delaware, thereby interfering with the legal custodial right of the said Elaine Porter.

secured an ex parte temporary custody order in Indiana, the former marital domicile, went to California to where the mother had moved, appeared at the mother's residence and took the child from her. The father was charged with child stealing.[2]

While the Court in *Cline* in dismissing the referenced charge against the father expressed its abhorrence for the methods used by both the mother and father involved in the incident, it noted that, "absent court order, both a mother and father are equally entitled to the custody, services, and earnings of an unmarried minor," *Cline, supra,* 185 Cal.Rptr. at 789, and re-articulated the interpretation of California law that, "in the absence of an order or decree affecting custody, a parent does not commit child stealing by taking exclusive possession of the child." *Cline, supra,* 185 Cal.Rptr. at 789 (citing *Wilborn v. Superior Court,* Cal.Supr., 51 Cal.2d 828, 337 P.2d 65 (1959)). This appears to be the majority rule. *See also* Annot., 20 A.L.R. 4th 823–30 (1983). I do not, however, accept either the father's premise in this case or the majority view. To accept this view would result in the provisions of 13 *Del.C.* § 701 permitting—indeed, encouraging—parents to engage in the type of reprehensible conduct which this defendant father unabashedly admits. In this regard, I find guidance in the case of *State v. West,* Or. Ct.App., 70 Or.App. 167, 688 P.2d 406 (1984).

In *West* a final decree of divorce also made provision for an award of joint custody of the parties' two-year-old daughter. Father was awarded physical custody for the three days per week he did not work and for his period of vacation. Mother was awarded custody for the remaining four day period. The defendant mother absconded with the child to Missouri, where she was eventually arrested. She returned to Oregon and was charged with custodial interference. In Oregon, a person commits custodial interference if:

knowing or having reason to know that the person has *no legal right to do so,* the person takes, entices or keeps another person from the other person's lawful custodian with intent to hold the other person permanently or for a protracted period.

(Emphasis supplied)

Or.Rev.Stat. §§ 163.245(1).

The defendant argued that because she was a joint custodian it would be legally impossible for her to be guilty of custodial interference. The Court in rejecting that argument observed that joint custody means that the parents have equal rights and responsibilities. *West,* 688 P.2d at 408 n. 1. Thus, "neither parent could remove the children without infringing on the powers, rights, and duties of the other." *West,* 688 P.2d at 408 (quoting *People v. Harrison,* Ill.App., 82 Ill.App.2d 530, 37 Ill.Dec. 820, 822, 402 N.E.2d 822, 824 (1980)). Consequently, the Court held that the defendant could not assert her joint custodial status in order to avoid prosecution. *West,* 688 P.2d at 408.

While the courts in *West* and *Harrison* were called upon to determine whether a *court ordered* joint custodian could be charged with a crime in the nature of our Interference with Custody statute, I am satisfied that the rationale supporting the viability of such a charge against the 13 *Del.C.* § 701 joint natural custodian is the same. The Court in *West* stated as follows:

Clearly, the primary focus of the statute is the protection of the rights and interests of the two victims of the offense: the child and the "lawful custodian" from whom the child is "taken, enticed or kept." The focus is not on the legal status of the one who does the taking, enticing or keeping from.

... "[J]oint custody" means that both parties share the legal responsibility for parental decision-making. It is regarded by its proponents as a meaningful alter-

---

**2.** The California Penal Code § 278 makes it a crime to maliciously take, entice away, detain, or conceal a child from the person having lawful charge of the child.

native to the win-lose psychology of the courtroom. Each parent is required to consult with the other regarding the important questions in the life of *their* child. ... [T]he parents simultaneously and continuously share rights and responsibilities....

When defendant removed the child from the state and failed to disclose her whereabouts, she was infringing on rights and responsibilities of the father. The emotional and financial costs suffered by him in trying to locate his daughter are among the primary evils that the statute was intended to deter. [citation omitted] To interpret the statute as defendant suggests would clearly be contrary to the parental rights the statute was intended to protect. Because of the legal rights of the father, defendant cannot rely on her joint custodial status to justify the act of secreting her daughter.

688 P.2d at 408.

The Court in *Harrison* observed that:

[c]ustody is a form of guardianship, and joint custody merely reflects the law of Illinois [namely]: "The parents have equal powers, rights and duties concerning the minor." [citation omitted]

It therefore follows that neither parent could remove the children without infringing on the powers, rights and duties of the other. The appellate court in *Ware v. Law* (1919), 214 Ill.App. 8, 14, speaking of co-administrators said: "We think, therefore, that there is merit in the contention that each in a sense bore the relationship of trustee towards the other."

\*    \*    \*    \*    \*    \*

In our view, even assuming *arguendo* that there was some form of custody in defendant, there was also custody in another within the meaning of the statute. Under defendant's interpretation of the statute, children would become mere chattels to be disposed of according to an Act to revise the law in relation to joint rights and obligations [citing statute]

wherein a bank may pay over a deposit to any joint tenant without liability. We decline to comment further on any such repugnant concept.

37 Ill.Dec. at 822, 402 N.E.2d at 824.

It is clear that the provisions of 13 *Del.C.* § 701(a) delineate rights and responsibilities as between natural parents where no valid custody order exists. Indeed, it has been recognized that a court order of joint custody may effect no different status in fact or in law than would exist in the absence of a court order. In the case of *W.V., II v. P.B.V.,* Del.Fam.Ct. No. 1270, 1982 (March 2, 1984) Judge James stated as follows:

"Currently, the parents enjoy legal custody pursuant to 13 *Del.C.* § 701(a) which provides that '[t]he father and mother are the joint natural custodians of their minor child and are equally charged with the child's support, care, nurture, welfare and education.' Based upon the evidence presented, the Court is convinced that this statutory delegation of responsibility for the children should not be altered after applying the factors set forth in 13 *Del.C.* § 722 to the facts of the case."

The Court in entering the actual order of joint custody used virtually the selfsame language of 13 *Del.C.* § 701(a).

Having stated the above, I simply cannot accept the proposition that the legislature intended that children and their parents who are joint custodians pursuant to the provisions of 13 *Del.C.* § 701(a) should not have the protection of the criminal justice system *vis a vis* the proscription of the custodial interference statute. Further, I simply cannot accept the proposition that the legislature intended that in order for children and their parents to have the protection of the criminal justice system the parents must enter the fray and do battle in the courts in order to secure an order of custody.

I am therefore satisfied that when considering the interplay of the custodial inter-

ference statute with the legal rights of parents, aside from any more specific delineation of rights and responsibilities, there is no basis for distinguishing between parents and children governed by the provision of 13 *Del.C.* § 701(a) and cases governed by a court order of custody.

In the case *sub judice*, therefore, the mother had equal rights and responsibilities with respect to Andrea. When the father absconded with Andrea to Texas he infringed on the rights and responsibilities of the mother. I am satisfied, therefore, that reading 13 *Del.C.* § 701(a) together with 11 *Del.C.* § 785, a parent, absent any valid custody order to the contrary, has no legal right to take a child into his or her own exclusive physical and *de facto* legal custody to the exclusion of the other parent's lawful custodial rights.

For reasons articulated herein the motion to dismiss is HEREBY DENIED.[3]

IT IS SO ORDERED.

---

3. The defendant also argues that since he is a lawful custodian of Andrea he cannot be found to have removed the child from the lawful custodian, an element of the offense. I am satisfied that this argument is disposed of by my holding herein to the effect that one joint custodian cannot assert his joint custodial status in order to avoid prosecution for his interference with the custodial rights and duties of the other lawful joint custodian.