In the Matter of the Marriage of

WITTKE,
*Respondent,*
*and*

WITTKE,
*Appellant.*

(37058; A37855)

738 P2d 206

Donald O. Tarlow, Newberg, argued the cause and filed the brief for appellant.

Ronald W. Stone, McMinnville, argued the cause for respondent. With him on the brief was Haugeberg, Rueter, Stone & Gowell, P.C., McMinnville.

VAN HOOMISSEN, J.

Warren, J., concurring in part; dissenting in part.

## VAN HOOMISSEN, J.

This is a proceeding to modify the custody provisions of the parties' 1980 dissolution judgment. The modification court ordered that joint custody be continued, but that the parties' child be in mother's physical custody in Oregon during the school year and with father in Utah each summer. Father appeals.

The original judgment provides, in relevant part:

"5. The parties have one child, namely, MAC BRIAN WITTKE, born July 21, 1975. It is agreeable to the parties that both parties have joint custody of the minor child, subject to physical custody being with [Father] from September 1 to May 30, and with [Mother] from June 1 to August 30. That during the time of physical custody with [Father], [Mother] shall have a minimal visitation as follows: Every other weekend being Friday evening to Sunday evening. One evening during the week and alternating Christmas and Thanksgiving vacations, Christmas Eve always with [Father] and Christmas Day always with [Mother]. Alternating spring vacations when the child is in school. [Mother] shall have the child on Mother's Day and alternate birthdays of the child and [Father] shall have the child on Father's Day each year."

That arrangement apparently worked reasonably well for about five years.[1]

---

[1] In the past, this court has expressed uncertainty about the meaning of the term "joint custody." *See Murray and Musto,* 47 Or App 245, 247, 614 P2d 132, *rev den* 290 Or 1 (1980); *Bohn and Bohn,* 43 Or App 561, 565, 603 P2d 781 (1979) (Joseph, C. J., specially concurring), *modified on other grounds,* 288 Or 697, 607 P2d 1375 (1980). In *Gatti and Gatti,* 73 Or App 581, 584, 699 P2d 1151 (1985), we explained that joint custody has *not* been awarded when the effect of a judgment actually awards custody to one parent and provides, for example, extensive visitation rights to the other.

In *Handy and Handy,* 44 Or App 225, 229-230, 605 P2d 738 (1980), we questioned the practice of separating "joint legal custody" from "physical custody." We noted that, in its terminology authorizing a court to decree "future care and custody, by one party or jointly," ORS 107.105(1)(a) does not seem to recognize a distinction between "joint legal custody" and "physical custody."

Professor Folberg, in his article "Joint Custody Law—The Second Wave," 23 *J Fam L* 1 (1984), comments:

"One difficulty in implementing joint custody legislation in some states is the confusion over joint custody terms. * * * The clear trend is to define joint custody in terms of shared decision-making regarding matters of health, education, and welfare. An increasing number of states legislatively distinguish joint legal (decision-making) custody from joint physical (residential) custody." 23 *J Fam L* at 4.

In Folberg's terminology, Oregon is still legislatively in the first wave. The chart

In 1985, father decided to move to Utah, the state in which he was raised and where he has family ties, because his real estate business was faltering. He told mother that he wanted to take their child with him. She then moved to modify the judgment to prohibit him from moving out of Oregon, or moving more than fifty miles from Yamhill County, without court approval. He moved to require her to pay child support. She moved to require him to pay transportation costs if he were allowed to take the child to Utah and for child support when the child was with her. After a hearing, the court modified the original judgment as follows:

"1.  That the roles of the parents be reversed, that the child remain in the physical custody of his mother for the school year and live with his father each summer. The precise dates for changing physical custody of the child shall be flexible but should be no sooner than one week after school is out and no later than one week before school starts.

"2.  Christmas and spring vacation shall be alternated each year. Respondent shall have the minor child during Christmas vacation of 1985.

"3.  Costs of transportation shall be shared equally by each party, with each party paying to send the child to the other.

"4.  Respondent shall contribute the sum of $75 per month as child support for 12 months a year. Said sum shall be paid to Petitioner until the child attains the age of 18 years and continuing thereafter so long as the child is a child attending school as defined in ORS 107.108(4)."

Father contends that the trial court erred in refusing to allow him to take the child to Utah. He argues that he is the child's psychological or primary parent, that his move to Utah was dictated by legitimate economic and social considerations and that the child's best interests will be served by living with him. *See Boone and Boone,* 75 Or App 413, 706 P2d 205 (1985); *Brink and Brink,* 75 Or App 665, 706 P2d 1015, *rev den* 300 Or 451 (1985).

█  We first examine the modification court's decision to continue joint custody. Although father did not specifically

---

accompanying the article (23 *J Fam L* at 50) is interesting, because it depends entirely on citations of our opinions to give any content whatsoever to Oregon's statutory provisions.

ask that joint custody be terminated, he contended below that the parties' custodial relationship was joint custody *in name only*. In his appellate brief he contends, in relevant part,

"[t]hat this case is at the end [of the joint custody spectrum] where joint custody is present *in name only*." (Emphasis supplied.)

He argues that this case is very similar to *Gatti and Gatti, supra* n 1, in that he has had the primary physical custody of his son and that mother only has had what *Gatti* refers to as "extensive visitation rights." Pointing to specific evidence in the record, he argues that it "demonstrates that this was not a case of true joint custody." He concludes:

"Instead [of joint custody], what existed in this case, and what was ignored by the trial judge, was that for all intents and purposes, [father] was the custodial parent."

It is clear from the record that, at the hearing, father was less concerned with labels than with the substance of the dispute, *i.e.*, which parent should have physical custody of the child most of the time. In this case, "most of the time" means during the school year, or about nine months annually. Thus, even though father did not specifically ask that joint custody be terminated, the effect of his evidence at the hearing, and his contention below and in this court, is to request that he have sole custody in Utah and that mother have visitation in Oregon. We interpret that to be a request that joint custody be terminated and that sole custody be awarded to him. *See Gatti and Gatti, supra.* Furthermore, mother's attorney argued to the trial court that father "has unilaterally decided to move to St. George, Utah, and wishes to take [the parties'] child with him, *which necessarily abrogates [mother's] joint parental rights during the school year.*" (Emphasis supplied.) That analysis is undoubtedly correct, but it ignores the two-way street. If father moves to Utah and the child remains with mother in Oregon, that necessarily abrogates father's joint parental rights during the school year.

Continuing joint custody in this case ignores the intensity of this litigation and mother's arguments about father's insensitivity and irresponsibility in moving to Utah. The "theory" of joint custody is unassailable. In this case, however, the reality is that the parties are not presently in a mood to set aside their differences and base their decisions

solely on the best interests of their child. *See State v. West,* 70 Or App 167, 688 P2d 406 (1984). The possibility for on-going cooperation that is the essence of joint custody no longer exists here. *See State v. West, supra,* 70 Or App at 171; *Heinel and Kessel,* 55 Or App 275, 278, 637 P2d 1313 (1981). In view of father's move to Utah and the resulting conflict between the parties, it is improbable that they can or will effectively share equal responsibility and authority in their child's life or easily make mutual decisions regarding his welfare without the continued intervention of the courts. *See Gatti and Gatti, supra; Muffet and Muffet,* 65 Or App 273, 671 P2d 118 (1983); *Murray and Musto, supra* n 1 (1980); *Handy and Handy, supra* n 1. Therefore, without deciding whether the parties' custody arrangement ever was joint custody *in fact,* on *de novo* review we terminate joint custody.

■     The remaining issue is which parent should have custody. The trial court found that each is a fit and proper person to have custody. The court did not award custody to either parent; it concluded only that the child should live with mother in Oregon during the school year and with father in Utah each summer. Therefore, there is no basis in this case for giving deference to the court as to which parent should have custody. The court never made that choice.

The child has lived primarily with father since 1980, from September through May of each school year. He visited with father during the summer months when he was living in mother's home. Father had the major responsibility for the child's physical care and financial support. He has been intimately and constructively involved in the child's education. The child's primary interests outside school were sports-related activities, and father participated in those activities as a coach and fan. Understandably, father emerged as the psychological or primary parent.

The trial court found that mother had declined an opportunity for professional and economic advantage, because it would have required her to move from McMinnville to Salishan, thus jeopardizing the joint custody arrangement, and that father had moved to Utah "without exhaustive research into his employment opportunities in Oregon" and "without consideration of his [joint custody] agreement with [mother]." The court expressed concern over the fact that father, whose

real estate business was faltering, had not fully explored employment opportunities in Oregon before deciding to move to Utah. Even assuming that father's decision to move to Utah was properly the concern of the trial court, the record fully supports father's contention that the move to Utah was based on legitimate economic and social considerations and was made only after he had tried without success to find other opportunities in Oregon. Evidence in the record documents the poor economic climate in this state at the relevant time.

Further, the child, age nine at the time of the hearing, clearly expressed his preference to live with father in Utah, and he cogently articulated his reasons. We give his preference weight in our analysis. *See Tingen v. Tingen,* 251 Or 458, 461, 446 P2d 185 (1968); *Hurner v. Hurner,* 179 Or 349, 365, 170 P2d 720 (1946).

Ordinarily, we would defer to the trial court on the question of custody. In this case, however, the trial court did not decide the question; thus, there is nothing to defer to. On *de novo* review, we award custody to father. We remand to the trial court for determination of visitation and child support issues only.

Judgment modified to terminate joint custody and to award custody to father; remanded for determination of visitation and child support only. No costs to either party.

**WARREN, J.,** concurring in part; dissenting in part.

I agree that father should be allowed to move to Utah without losing physical custody of his son during the school year. I disagree that this court should terminate joint custody in the absence of such a request from either parent.

The majority recognizes that father did not ask that joint custody be terminated but concludes that it should do so, because father contended that the parties' custodial relationship was joint custody "in name only." Father's contention, however, was made in support of his argument that, despite the joint custody arrangement, he had, in fact, assumed the bulk of the parenting responsibilities. He argued that, as *de facto* primary parent, the form of the custody agreement should have no bearing on his right to relocate. Father's

argument was that the best interests of the child should dictate the correct result. In regard to the continuation of the form of custody, however, father specifically stated that he did not wish that it be terminated. In closing argument, father's attorney stated:

> "[N]either party in this case has sought to change the formal legal relationship regardless of the outcome. Although the court's decision may affect the structure of the joint arrangement, neither party is desirous of changing the shared responsibility for their child."

A disagreement concerning the physical custody of a child, requiring court intervention, does not necessarily indicate an inability to share responsibility for decision making with respect to all facets of a child's well-being. The majority's decision to terminate joint custody under these circumstances may very well inhibit properly motivated parents from seeking court assistance in resolving disputes concerning physical custody. The precedent of today's decision gives justifiable reason for parents to fear that a right to share the responsibility for raising the parties children may be terminated altogether, despite the fact that neither desires that result. Neither party asked for the form of custody to be changed, neither wanted it. We should not always do what both parties want us to do, but we should almost never do what both agree should not be done.

Our function is to resolve issues disputed by the parties, not to decide what issues the parties could have disputed.

Richardson, Newman and Deits, Judges, join in this dissent.