Argued and submitted August 30, affirmed October 26, 1988

# STATE OF OREGON,
*Respondent,*

*v.*

# BETTY LOUISE GAMBONE,
*Appellant.*

(86102577; CA A44583)

763 P2d 188

Lawrence J. Hall, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solictor General, and Michael C. Livingston, Assistant Attorney General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Defendant was convicted of custodial interference in the second degree. ORS 163.245. She appeals, contending that the trial court erred in finding that Children's Services Division (CSD) was a "lawful custodian" under ORS 419.569. She also argues that, when she took the children, she was unaware that she had no right to do so.[1] We affirm.

CSD placed defendant's children in protective custody after receiving a report that her eight-year-old daughter had been abused by her father. Because defendant indicated to CSD that she was aware of the abuse, but was unwilling to prevent the father from seeing the children alone, CSD retained custody pending a court hearing set for the next day.

After being informed of that, defendant left. Soon afterward, however, she drove back with the father to the CSD parking lot, where the children were seated in a state car. The father held the driver's door, preventing CSD workers from leaving with the children. Defendant stood on the passenger side, screaming at the father and CSD workers. As the argument escalated, the children began crying for their mother and finally let themselves out of the car to run to her. Fearing that someone might be hurt, one of the workers told defendant to take her children home, where they would meet her.

Defendant could not be found at home that evening, and she later refused to disclose her children's whereabouts to CSD. When defendant took her children, no hearing had been held or court order issued with respect to defendant's parental rights. Defendant was arrested for custodial interference on October 31, 1986.

■    *Former* ORS 163.245(1) provided:

"A person commits the crime of custodial interference in the second degree if, knowing or having reason to know that the person has no legal right to do so, the person takes, entices or keeps another person from the other person's lawful custodian with intent to hold the other person permanently or for a protracted period."

---

[1] Given defendant's previous involvement with CSD in 1981 and 1985 and CSD's repeated statements that it would retain custody until a court hearing the next day, this contention has no merit.

Defendant argues that, because there was no court order affecting her parental rights when she took her children, she was the children's lawful custodian. She contends that ORS 163.245 was intended to protect the rights of custodial parents and that, in the absence of a hearing, no other statute gives CSD rights superior to a parent's. Defendant would have us conclude that, because CSD could not have been a lawful custodian under ORS 163.245, it was legally impossible for her to have committed custodial interference.[2]

■    CSD clearly may act against the wishes of the custodial parent if it is necessary to protect the child.[3] ORS 418.760(2) provides that, if a law enforcement agency believes that child abuse has occurred, CSD "shall provide protective social services * * * if necessary to prevent further abuses to the child or to safeguard the child's welfare."[4] Under ORS 419.569(1)(b), CSD may take a child into temporary custody

---

[2] We disposed of the argument that it is legally impossible for a parent with joint custody to commit custodial interference in *State v. West,* 70 Or App 167, 171, 688 P2d 406 (1984):

"[T]he primary focus of the statute is the protection of the rights and interests of the two victims of the offense: the child and the 'lawful custodian' from whom the child is 'taken, enticed or kept.' The focus is not on the legal status of the one who does the taking, enticing or keeping from."

[3] Defendant argues that ORS 418.010 makes it clear that, in the absence of a hearing, CSD's custodial rights are inferior to those of a parent. That statute provides:

"Nothing in ORS 418.005 shall be construed as authorizing any state official, agent or representative, in carrying out any of the provisions of that section, to take charge of any child over the objection of either of the parents of such child or of the person standing in loco parentis to such child."

ORS 418.010 has no application to this case, because CSD's actions were authorized by ORS 419.569 *et seq.*

[4] ORS 418.760 provides, in part:

"(1) Upon receipt of [a child abuse report], the Children's Service's Division or the law enforcement agency shall immediately cause an investigation to be made to determine the nature and cause of the abuse of the child. * * *

"(2) If the law enforcement agency conducting the investigation finds reasonable cause to believe that abuse has occurred, the law enforcement agency shall notify in writing the local office of the Children's Services Division. The Children's Services Division shall provide protective social services of its own or of other available social agencies if necessary to prevent further abuses to the child or to safeguard the child's welfare.

"(3) If a child is placed in protective custody by the Children's Services Division, the division shall promptly make reasonable efforts to ascertain the name and address of the child's parent or guardian. If the name and address can be ascertained, the division shall notify the parent or guardian that the child is in protective custody."

"[w]here the child's condition or surroundings reasonably appear to be such as to jeopardize the child's welfare."[5] Moreover, ORS 419.573(2)(b) provides that, when a child has been taken into temporary custody, the child shall be released to its parent *except* "[w]here the person taking the child into custody has probable cause to believe that the welfare of the child * * * may be immediately endangered by the release of the child."[6] None of those obligations of CSD is conditioned upon the existence of a prior court order.

■. Once a child is in temporary custody, it is the court, not the parent, that decides if the child may be returned home. ORS 419.577(3)(b) provides:

> "When the child is taken into temporary custody pursuant to ORS 419.569 and placed in shelter care, a parent or child shall be given the opportunity to present evidence to the court at the hearings specified in paragraph (a) of this subsection, and at any subsequent review hearing, that the child can be returned home without further danger of suffering physical injury or emotional harm, endangering or harming others, or not remaining within the reach of the court process prior to adjudication. * * *"

---

[5] ORS 419.569 provides, in part:

"(1) A child may be taken into temporary custody by a peace officer, counselor, employe of the Children's Services Division or by any other person authorized by the juvenile court of the county in which the child is found, in the following circumstances:

"* * * * *

"(b) Where the child's condition or surroundings reasonably appear to be such as to jeopardize the child's welfare.

"* * * * *"

[6] ORS 419.573 provides, in pertinent part:

"This section establishes procedures that a person must follow who takes a child into temporary custody under ORS 419.569. The person must comply with the following:

"* * * * *

"(2) The person taking the child into custody shall release the child to the custody of the child's parent or other responsible person in this state, except in the following cases:

"* * * * *

"(b) Where the person taking the child into custody has probable cause to believe that the welfare of the child or others may be immediately endangered by the release of the child.

"* * * * *"

Because defendant was unable or unwilling to assure CSD of her children's safety from the husband, CSD was obligated by statute to remove them to shelter care until a court hearing could be held. As one "responsible by authority of law for the care, custody or control of another," CSD was a "lawful custodian."[7]

Affirmed.

---

[7] ORS 163.215 provides a definition:

"(2) 'Lawful custodian' means a parent, guardian or other person responsible by authority of law for the care, custody or control of another."