Argued and submitted January 31, affirmed April 12, 1995

## STATE OF OREGON,
*Respondent,*

*v.*

## AMMAR HADI FITOURI,
*Appellant.*

## (C921351CR; CA A80385)

893 P2d 556

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Stephanie Andrus, Assistant Attorney General, argued the cause for respondent. With her on the brief were

Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

Defendant appeals his conviction for custodial interference in the first degree. ORS 163.257. He assigns error to the denial of his motion for judgment of acquittal. We affirm.

In 1992, defendant, his wife, Jeanette Dieringer, and their four-year-old son lived together in Beaverton. On June 27, 1992, while Dieringer was at a weekend retreat, defendant, without informing Dieringer of his intentions, took the couple's son from Oregon to Frankfurt, Germany and, ultimately, to Tripoli, Libya, where his family resides. When Dieringer came home on June 28, she found defendant, the child, and most of their belongings were gone. After finding credit card statements showing the purchase of airline tickets, Dieringer began to suspect that defendant had taken their son to Libya. However, at least until October 1992, Dieringer's efforts to contact defendant and their son, or to otherwise positively establish their whereabouts, were unsuccessful.

In early August, Dieringer petitioned for, and was granted, temporary custody of the child. In mid-September, the state obtained two separate indictments against defendant, each of which charged defendant with a single count of custodial interference in the first degree. The custodial interference statute, ORS 163.257, provides:

"(1)  A person commits the crime of custodial interference in the first degree if the person violates ORS 163.245 and:

"(a)  Causes the person taken, enticed or kept from the lawful custodian or in violation of a valid joint custody order to be removed from the state; or

"(b)  Exposes that person to a substantial risk of illness or physical injury."

ORS 163.245 provides:

"(1)  A person commits the crime of custodial interference in the second degree if, knowing or having reason to know that the person has no legal right to do so, the person takes, entices or keeps another person from the other person's lawful custodian or in violation of a valid joint custody order with intent to hold the other person permanently or for a protracted period of time."

The first of the two indictments alleged that defendant had committed the criminal acts necessary for a conviction for custodial interference in the first degree "on and between June 26 and September 2, 1992." The second indictment charged that defendant had committed those acts "on or between September 3 and September 10, 1992."

On October 1, 1992, Dieringer was finally able to contact defendant in Libya by telephone. Dieringer tape-recorded that conversation and four subsequent telephone conversations she had with defendant. Those recordings show that Dieringer never informed defendant of the custody order or the indictments during those conversations, even when defendant expressed concerns about the consequences of his actions. Defendant said nothing during the course of those recorded conversations that would suggest that, as of the dates alleged in the indictments, he knew that Dieringer had been awarded custody by court order.

In December 1992, defendant returned to the United States with the child. He was immediately arrested and charged with custodial interference.

At trial, at the close of the state's evidence, defendant moved for judgment of acquittal on both indictments. He argued that a parent who is a lawful custodian cannot be liable for custodial interference under ORS 163.245, except for a knowing violation of a joint custody order. Relying on that construction, defendant argued that because the state's evidence was insufficient to show that he knew, as of the dates alleged in the two indictments, that a custody order had awarded Dieringer custody, no rational trier of fact could find that he had the state of mind necessary for a conviction for custodial interference. The state responded that defendant's reading of the statute was too narrow and that, regardless of the custody order or defendant's knowledge of that order, he could be liable if he knew, or had reasons to know, that his conduct violated Dieringer's parental rights.

The trial court adopted defendant's construction of ORS 163.245. Consequently, it granted defendant's motion for a judgment of acquittal on the count charged in the first (June 26-September 2) indictment, on the ground that no

custody order designated Dieringer as the child's lawful custodian was in effect during the greater part of the time period alleged. However, the court denied defendant's motion with respect to the second indictment, concluding that the state had presented sufficient evidence showing that defendant knew that an order granting custody to Dieringer was in effect during the time period (September 3-10) alleged in that indictment.

In submitting the remaining charge to the jury, the court adopted the state's proposed instructions, which employed the general terms of ORS 163.245 and which did not refer to the custody order, much less charge that, to convict, the jury must find that defendant knew or had reason to know of that order.[1] Neither counsel meaningfully addressed the existence of a custody order, or defendant's knowledge thereof, in their closing arguments.[2] In short, although the trial court based its rulings on defendant's narrower construction of ORS 163.245, that construction was never conveyed to the jury. The jury subsequently convicted defendant, and judgment was entered on that verdict.

■    Defendant assigns error to the trial court's denial of his motion for judgment of acquittal on the count charged in the second indictment. He contends that that ruling was erroneous because there was insufficient evidence to support

---

[1] Those instructions stated:

"In this case, to establish the crime of Custodial Interference in the First Degree, the state must prove the following five elements:

"First, that the act occurred in Washington County, Oregon.

"Second, that the act occurred on or between September 3rd and September 10, 1992.

"Third, that the defendant, believing that he had no legal right to do so, knowingly took or kept [the child from his] lawful custodian.

"Fourth, that the defendant * * * caused [the child] to be removed from the State.

"And fifth, that the defendant * * * had the intent to hold [the child] for a protracted period of time.

"This definition applies. Lawful custodian. This means a parent, guardian or other person responsible by authority of law for the care, custody or control of another."

[2] Defendant's counsel did mention, almost as an aside, that "they have to prove that he had knowledge of some lawful order." However, counsel did not discuss the lack of evidence to support that element, or otherwise make an issue of defendant's knowledge.

a finding that, as of the dates alleged, he knew that a custody order had issued granting Dieringer custody of their child, and nevertheless kept the child in Libya. Although the state disputes that contention, its primary response is a reiteration of its legal position at trial: ORS 163.245 applies to cases where one parent takes and keeps their child away from the other, even in the absence of a custody order. If the statute is so interpreted, the state argues, there was ample evidence to support the conviction.

We conclude that the state's construction of ORS 163.245 is correct and, thus, affirm. *State v. West*, 70 Or App 167, 688 P2d 406 (1984). In *West*, we addressed the meaning of the pivotal statutory phrase, "knowing or having reason to know that the person has *no legal right* to do so." ORS 163.245(1). (Emphasis supplied.) There, the parents shared custody pursuant to a joint custody order, and the defendant mother absconded with the child to another state. We affirmed the mother's conviction for custodial interference, holding that her status as one of the child's lawful custodians did not preclude a finding that she violated ORS 163.257.[3] In particular, we concluded that, although the mother had a right to the physical custody of her child, she had no legal right to remove the child from the state, because in doing so, she necessarily infringed on the father's equal right to custody:

> "Clearly, the primary focus of the statute is the protection of the rights and interests of the two victims of the offense: the child and the 'lawful custodian' from whom the child is 'taken, enticed or kept.' The focus is not on the legal status of the one who does the taking, enticing or keeping from.
>
> "An award of 'joint custody' means that both parties share the legal responsibility for parental decision-making. * * * [T]he parents simultaneously and continuously share rights and responsibilities. * * *

---

[3] At the time that *West* was decided, ORS 163.245 provided:

> "(1) A person commits the crime of custodial interference in the second degree if, knowing or having reason to know that the person has no legal right to do so, the person takes, entices or keeps another person from the other person's lawful custodian with intent to hold the other person permanently or for a protracted period."

ORS 163.245 was amended in 1987 to include the present "or in violation of a joint custody order" language.

"When defendant removed the child from the state and failed to disclose her whereabouts, she was infringing on rights and responsibilities of the father. The emotional and financial costs suffered by him in trying to locate his daughter are among the primary evils that the statute was intended to deter." 70 Or App at 171.

Defendant attempts to distinguish *West* on the ground that the parents had equal custodial rights pursuant to a joint custody order. That distinction, while accurate, is irrelevant to *West's* essential rationale. That rationale — that one parent has no legal right to infringe upon the rights of another with whom he or she lawfully shares custody — applies equally to parents who share custody without a joint custody order. ORS 109.030.[4]

■ We thus conclude that the state's construction of ORS 163.257 is correct. Regardless of the existence of a joint custody order, a child's lawful custodian has no legal right to take or keep a child from another who has equal custodial rights to the child.

Consistent with that construction of ORS 163.245, the state was not obliged to prove that defendant knew, on and between September 3 and September 10, that he was keeping the child away from Dieringer in violation of a joint custody order. Rather, the state was required only to show that defendant knew that his actions infringed on Dieringer's equal custodial rights.

■ Viewing the evidence in the light most favorable to the state, we conclude that a rational trier of fact could have found that the prosecution met its burden of proof. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). In particular, the state presented Dieringer's testimony that: (1) defendant never informed her that he intended to take the child out of the country, much less for an indefinite period; (2) defendant removed bills, business documents, and pictures of defendant and the child from the family apartment before leaving; (3) defendant left a note that stated that he had taken the

---

[4] Under ORS 109.030:

"The rights and responsibilities of the parents, in the absence of misconduct, are equal, and the mother is as fully entitled to custody and control of the children and their earnings as the father."

child to Wenatchee, Washington for "a week or two;" (4) defendant did not contact Dieringer and inform her of his whereabouts; and (5) defendant returned to the United States from Libya with the child only after Dieringer assured him that he would not be punished for his actions. From that evidence, the jury could reasonably view defendant's actions as evincing subterfuge and flight, motivated by his knowledge that he had no legal right to take the child, because doing so infringed on Dieringer's equal custodial rights. *State v. Bayse*, 122 Or App 608, 614, 859 P2d 542 (1993). The trial court correctly denied defendant's motion for a judgment of acquittal.

Affirmed.