*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JACOB G., | ) | |
| | ) | Supreme Court No. S-18567 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-22-00337 CI |
| v. | ) | |
| | ) | O P I N I O N |
| SAVANAH F., | ) | |
| | ) | No. 7692 – March 29, 2024 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, John C. Cagle, Judge.

Appearances: Kristina Hallock, AK Law LLC, Palmer, for Appellant. No appearance by Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

BORGHESAN, Justice.

## I. INTRODUCTION

A person who successfully petitions for a long-term domestic violence protective order (DVPO) is entitled to seek attorney's fees from the respondent. The court may deny these fees only in exceptional circumstances.

In this case a child's father petitioned for a DVPO after the child's mother took the child from Alaska to Texas without the father's knowledge and limited the father's contact with the child in violation of the parents' custody order. The superior court, finding that the mother had committed the crime of custodial interference,

granted the father a long-term DVPO. But the superior court denied the father's motion for attorney's fees without explanation.

We assume the superior court agreed with one or both of the arguments the mother made when opposing the motion for fees. But neither of those arguments supports the denial of fees. First, the mother argued that her act of custodial interference was justified by the father's use of drugs and alcohol while he had custody of the child, and that the father was therefore not a real victim. This argument fails to recognize the harm caused by custodial interference, despite a parent's belief that the interference was justified. Second, the mother argued that she could not afford to pay attorney's fees. But the record indicates that she paid her own attorney's fees and had the ability to earn income, so she failed to establish exceptional circumstances. We therefore reverse the order denying the motion for attorney's fees.

## II. FACTS AND PROCEEDINGS

### A. Background Facts

Jacob G. and Savanah F. had a daughter together in 2016.[1] The couple separated, and in 2020 a court awarded Jacob primary physical custody. The custody order provided that neither parent could take the child out of state without written permission of the other parent.

### B. Protective Order Proceedings

In May 2022 Jacob petitioned for a 20-day ex parte DVPO and a long-term DVPO. Jacob alleged that Savanah had taken their child to Texas without informing him beforehand, would not tell him where they were living, limited his contact with the child, and threatened to keep the child there for up to seven months. He requested that the district court issue a writ of assistance to return the child to him in accordance with the custody order and to order Savanah's visitation be supervised to prevent her from absconding with the child again. He also requested attorney's fees.

---

[1] We use first names and initials to protect the parties' and child's privacy.

The district court issued a 20-day ex parte DVPO the same day. It awarded Jacob temporary custody of the child, ordered supervised visitation with Savanah, and prohibited both parents from removing the child from Alaska without court permission. Per Jacob's request the court issued a writ of assistance instructing peace officers to help Jacob recover his daughter, her belongings, and her vital records. Because Jacob and Savanah had a pending domestic relations case before the superior court, the district court reassigned Jacob's long-term DVPO petition to the superior court.

The district court held a hearing in late May that both parties attended telephonically with counsel. The district court again awarded Jacob temporary custody, confirmed that Savanah was aware of the 20-day protective order, and ordered her to return the child to Alaska by June 1st.

The superior court held a hearing on Jacob's long-term DVPO petition in June. Both parties testified. Jacob testified that in April 2022 Savanah left Alaska with the child and traveled to Texas, where she enrolled in a medical esthetics program. Jacob claimed that Savanah did not notify him about her trip in advance. He further testified that when he discovered that Savanah and the child were in Texas, Savanah initially told him that she had taken their child on vacation. She subsequently told Jacob that she would remain in Texas with the child for six to seven months while she earned her medical esthetics certificate and would be back by Christmas. Jacob alleged that Savanah refused to tell him where she was and facilitated inconsistent contact with their daughter. On cross-examination Jacob testified that he had used drugs and alcohol in the past, but had recently tested negative for illicit substances in a hair follicle test.

Savanah argued that a DVPO was improper because she had not committed a crime of domestic violence. Jacob's petition was based on the allegation that Savanah had committed custodial interference, a crime of domestic violence under

AS 18.66.990(3)(A).[2]  Savanah maintained that she did not meet the elements for custodial interference because she was concerned for her daughter's safety if she remained in Alaska,[3] because she never intended to leave Alaska for a "protracted" or "extended" period of time,[4] and because she had availed herself of other civil remedies by filing a motion to suspend visitation.  Savanah accused Jacob of drinking or using drugs around their child "almost daily" and explained that she had stopped living with him in January 2022 because of this conduct.

On cross-examination Savanah acknowledged that she was aware of the parties' custody orders awarding Jacob primary physical custody.  She admitted that she did not tell Jacob she was taking their child to Texas.

The superior court, noting that Savanah had known about Jacob's substance abuse for some time and failed to take appropriate action before absconding to Texas, concluded that Savanah had committed the crime of custodial interference in the first degree.  The court granted Jacob's long-term DVPO and emphasized that neither party could remove the child from Alaska without a court order.  The court also

---

[2]    *See* AS 18.66.990(3)(A) (providing that "crime involving domestic violence" includes "a crime against the person under AS 11.41"); AS 11.41.330(a)(1) ("A person commits the crime of custodial interference in the second degree if . . . being a relative of a child under 18 years of age . . . and knowing that the person has no legal right to do so, the person takes, entices, or keeps that child . . . from a lawful custodian with intent to hold the child . . . for a protracted period."); AS 11.41.320(a) ("A person commits the crime of custodial interference in the first degree if the person violates AS 11.41.330(a)(1) and causes the child . . . to be (1) removed from the state; or (2) kept outside the state.").

[3]    *See* AS 11.41.330(b) (providing affirmative defense of necessity does not apply to prosecution for custodial interference if "protracted period" exceeds shorter of 24 hours or time necessary to report to authorities that child is abused, neglected, or in imminent physical danger).

[4]    Savanah testified that she intended to stay in Texas long enough to complete her professional education program and for Jacob to undergo therapy in Alaska.

noted that it was concerned about the safety of the child with either parent and indicated it would file a report with the Office of Children's Services (OCS).

### C. Attorney's Fee Dispute

Jacob moved for $3,750 in attorney's fees under a provision of the protective order statute, AS 18.66.100(c)(14).[5] Although the statute provides for a discretionary fee award, Jacob cited our decision in *Lee-Magana v. Carpenter* holding that "it should be the exceptional case in which a court fails to grant what the statute allows."[6]

Savanah opposed, arguing that the policy rationales compelling fee awards in most DVPO proceedings did not apply to Jacob, who abused drugs and alcohol. She suggested that he was not "an actual victim of domestic violence." She also asserted that as a full-time student she earned virtually no income.

The superior court denied Jacob's attorney's fees motion without explanation.

Jacob appealed. Savanah did not participate in this appeal.

## III. STANDARD OF REVIEW

"We review attorney's fee awards for abuse of discretion."[7] We will vacate a denial of attorney's fees only if it is "arbitrary, capricious, manifestly unreasonable, or improperly motivated."[8] Whether the trial court properly applied a statute authorizing attorney's fees is a question of law we review de novo.[9]

---

[5] *See* AS 18.66.100(c)(14) (providing that "protective order under this section *may* . . . require the respondent to pay costs and fees incurred by the petitioner in bringing the action under this chapter" (emphasis added)).

[6] 375 P.3d 60, 65 (Alaska 2016).

[7] *Id.* at 63.

[8] *Rhodes v. Erion*, 189 P.3d 1051, 1053 (Alaska 2008) (quoting *Kellis v. Crites*, 20 P.3d 1112, 1113 (Alaska 2001)).

[9] *Lee-Magana*, 375 P.3d at 63.

## IV. DISCUSSION

### A. A Court May Deny Attorney's Fees To A Successful DVPO Petitioner Only In Exceptional Circumstances.

The parents' fee dispute is governed by the fee provision of Alaska's DVPO statute, AS 18.66.100(c)(14). This statute provides that "[a] protective order under this section may . . . require the respondent to pay costs and fees incurred by the petitioner in bringing the action under this chapter."[10]

Although such awards are discretionary, we have emphasized "strong" policy reasons to grant attorney's fees in DVPO cases.[11] In *Lee-Magana* we recognized that "in the absence of full reimbursement of attorney's fees, petitioners . . . may feel compelled to proceed pro se, and their lack of legal experience may deprive the court of the evidence it needs to make a correct decision."[12] By contrast, "represented petitioners are more likely to succeed in obtaining a protective order and are less likely to suffer further abuse."[13] Accordingly "it should be the exceptional case in which a court fails to grant what the statute allows."[14]

Because a successful petitioner is entitled to attorney's fees in all but exceptional DVPO cases, the trial court should explain any decision to deny fees. When a court awarding attorney's fees pursuant to Alaska Civil Rule 82 deviates from the prescribed fee schedule, it "shall explain the reasons for the variation."[15] Civil Rule 82 does not apply in this case, but it makes sense to require explanation for a denial of fees here too. If the trial court does not explain its decision to deny attorney's fees, it is

---

[10]  AS 18.66.100(c)(14).

[11]  *Lee-Magana*, 375 P.3d at 64.

[12]  *Id.*

[13]  *Id.*

[14]  *Id.* at 65.

[15]  Alaska R. Civ. P. 82(b)(3).

difficult for a reviewing court to determine whether the case is "exceptional" under *Lee-Magana*.

The superior court did not explain its denial of Jacob's request for attorney's fees. Savanah argued in her opposition to Jacob's request that Jacob was not a true victim of domestic violence, and therefore the policy reasons for awarding fees to successful DVPO petitioners did not apply to him. Savanah also claimed she should be excused from paying Jacob's attorney's fees because she could not afford to do so. The superior court did not state whether it accepted these arguments when denying Jacob's request. But even if it had, these reasons do not justify denying fees to Jacob.

### B. Savanah's Concerns About Jacob's Substance Abuse Did Not Justify Denying Jacob Fees.

The superior court found that Savanah committed custodial interference.[16] Savanah argued below that the policy rationales compelling fee awards in most DVPO proceedings did not apply to Jacob, contending that he was not "an actual victim of domestic violence." Her argument appears to be premised on two overlapping beliefs: (1) that custodial interference is different than other forms of domestic violence that may justify a protective order; and (2) that Jacob's substance abuse disqualifies him as a victim. This argument misconstrues what it means to be a victim of domestic violence.

When a parent commits the crime of custodial interference, "the victim of the crime is not only the child but also the custodian who has been deprived of the child's custody."[17] The custodial interference statutes "protect 'parental custody against all unlawful interruption, even when the child itself is a willing, undeceived

---

[16]    *See* AS 18.66.990(3)(A); AS 11.41.320.

[17]    *Strother v. State*, 891 P.2d 214, 220 (Alaska App. 1995).

participant in the attack on this interest of its parent.' "[18]   "Alaska's custodial interference statutes were intended to prohibit parents from abducting their children as a means of settling a custody dispute."[19]   "The emotional and financial costs suffered by [a legal custodian] in trying to locate [their child] are among the primary evils" that custodial interference statutes are intended to deter.[20]   Acts of custodial interference are included among the crimes that justify a DVPO because these acts can be used to control or threaten an intimate partner.[21]

In this case Savanah absconded with the child, limited Jacob's access to the child, and refused to disclose the child's whereabouts.  Jacob testified that Savanah took the child to Texas without letting him know, would not tell him the child's specific location, and led him to believe he would not see his child for months.  Although the superior court did not make specific factual findings, its decision to grant Jacob a protective order shows that it credited at least some of his testimony.  And Jacob's testimony establishes the kind of harms that the prohibition against custodial interference is meant to prevent.

To the extent Savanah's argument is based on the notion that the custodial parent is not a victim when the other parent commits custodial interference, that is incorrect as a matter of law.[22]   In enacting the custodial interference statute, the

---

[18]     *Id.* (quoting Comment. on the Alaska Revised Crim. Code, 5. Journal Supp. No. 47 at 21, 1978 S. Journal (June 12, 1978)).

[19]     *Id.*

[20]     *Id.* at 221-22 (quoting *State v. West*, 688 P.2d 406, 408 (Or. App. 1984)).

[21]     *See id.* at 220-22 (explaining that custodial interference statutes are intended to prevent parents from "abducting their children as a means of settling a custody dispute" and describing the emotional and financial harms custodial interference can cause parents).

[22]     *See id.* at 220 ("[T]he victim of the crime [of custodial interference] is not only the child but also the custodian who has been deprived of the child's custody.").

legislature took care to specify that the victims of custodial interference include both the child and the parent deprived of lawful custody.[23]

To the extent Savanah was arguing that in this particular case Jacob was not a victim because his substance abuse justified her actions, that argument too is contrary to law. A parent can claim the affirmative defense of necessity to charges of custodial interference only if the parent took the child for no more than 24 hours or the amount of time "necessary to report to a peace officer or social service agency that the child . . . has been abused, neglected, or is in imminent physical danger," whichever period of time is shorter.[24] According to the record, Savanah unlawfully held the child for over a month. By limiting the extent to which a parent may claim necessity as a defense to criminal charges of custodial interference, the legislature has rejected the notion that conduct like Savanah's is justifiable. Indeed the superior court observed that Savanah had known about Jacob's substance abuse for some time but failed to take appropriate action. And evidence that Jacob abused drugs or alcohol while having custody of the child does not disqualify him as a victim.

Nor can it be said that Savanah's conduct amounted only to a "minor" or "technical" crime of domestic violence. Depriving a parent of custody for over a month, limiting a parent's contact with the child, refusing to disclose the child's location, and threatening to keep the child for many months has the potential to cause great emotional anguish.

---

[23] Alaska Crim. Code Revision Part I, at 65 (Tent. Draft 1977) (quoting Model Penal Code § 212.4, cmt. (Tent. Draft No. 11 1960)) (explaining that custodial interference provisions "protect 'parental custody against all unlawful interruption, even' " in cases where the child is a willing participant in the interruption), *quoted in Strother*, 891 P.2d at 220.

[24] AS 11.41.330(b) (detailing situations in which necessity is not affirmative defense to crime of custodial interference); *see* AS 11.41.320.

For these reasons we conclude that Savanah's argument does not amount to exceptional circumstances that justified denying Jacob's motion for attorney's fees.

## C.    Savanah Failed To Establish Financial Circumstances Justifying A Denial Of Fees To Jacob.

Another possible basis for the court's denial of fees was Savanah's argument that she could not afford to pay Jacob's fees, which totaled $3,570. Savanah asserted that she was unemployed due to her full-time enrollment in esthetician school. Savanah also asserted that she was receiving financial support from a family friend and received tips when working in connection with school, but these did not amount to a living wage. The superior court did not make any factual findings regarding Savanah's ability to pay. But the record does not justify denying Jacob's request for fees based on Savanah's financial circumstances.

Savanah's financial declaration states that she paid her own legal fees, totaling $4,800. Savanah had been a student, but the record suggests she was on the way to obtaining an esthetician license that would allow her to earn income. Although coming up with $3,570 would be challenging for most people, the sum is relatively low in the context of attorney's fees. Courts must be cautious about denying attorney's fees solely because they would be difficult for the respondent to pay, lest denying fees become the norm rather than the "exceptional case."[25] Given the fact that Savanah paid her own lawyer, her apparent ability to earn income, and the relatively modest sum of fees, we see no exceptional circumstances that justify denying Jacob's attorney's fees.

## V.    CONCLUSION

We REVERSE the superior court's denial of Jacob's request for attorney's fees.

---

[25]    *Lee-Magana v. Carpenter*, 375 P.3d 60, 65 (Alaska 2016).