Argued and submitted May 28, reversed and remanded for new trial August 25, 1993

## STATE OF OREGON,
*Respondent,*

*v.*

## WENDY TRIX BAYSE,
aka Wendy Trix Basye,
aka Wendy Trix Taylor,
*Appellant.*

(10-89-09000, 10-89-09001;
CA A73472 (Control), A73473)
(Cases Consolidated)

859 P2d 542

Ingrid A. MacFarlane, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender, Salem.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

Defendant appeals her convictions for two counts of custodial interference in the first degree. ORS 163.257. We reverse.

In 1975 or 1976, defendant's daughter, Julie Bayse, began living with Michael Bohanan. The couple had two children: one born in 1981, and the other born in 1982. Bayse and Bohanan ceased living together in 1984 or 1985. Bohanan then began living with Phyllis Bounds. Although Bayse had legal custody of the children, Bohanan and Bounds had physical custody from 1986 until December, 1988.

In December, 1988, defendant decided to seek custody of her granddaughters. She retained an attorney, who advised her that she could obtain legal custody if Bayse would delegate it to her. In mid-December, 1988, Bayse signed a custody delegation that was valid for six months.

On December 27, 1988, defendant visited Bohanan and Bounds. She did not inform them of the custody delegation. On December 28, defendant took the children to a nearby store where she had arranged for a friend, Lucille McCrady, to meet her. McCrady drove defendant and the children to Redding, California. Defendant then took the children by bus to Arizona.

Bohanan reported to the police that the children had been taken. He also obtained a temporary custody order. At a hearing on May 4, 1989, Bohanan was granted permanent custody of the children. Defendant, who was still in Arizona, spoke with McCrady by telephone twice that day. They deny discussing, or knowing of, the custody determination at that time.

Shortly thereafter, defendant left Arizona with the children, because she believed that Bohanan had discovered her location. She drove up the California and Oregon coasts, and met McCrady in Newport, Oregon, in the second or third week of May, 1989. Defendant and the children continued north to British Columbia, and then made their way to West Palm Beach, Florida. In December, 1990, they

moved again, this time to Minnesota. Defendant was arrested there in March, 1991.

Defendant was indicted in Oregon, and brought to trial.[1] She intended to raise a "choice of evils" defense, ORS 161.200, and to present evidence that she took the children because Bohanan and Bounds were abusing them. Before trial, the state moved to preclude defendant from raising the choice of evils defense. That motion was granted. It also moved before trial to exclude all testimony, offered for any purpose, regarding alleged abuse of the children by Bohanan or Bounds. Defendant argued that the evidence was relevant to rebut the prosecution's case. The trial court ruled that the evidence was not relevant, and granted the state's motion to exclude all testimony regarding the alleged abuse.

At trial, defense counsel raised an objection early in the prosecutor's opening remarks. While arguing that objection, defense counsel expressed displeasure with the court's pretrial ruling. The court admonished him. Defense counsel responded that he was "trying to get some guidance." After some discussion, the court concluded "what you are attempting to do is [to] get into abuse, which has no relevancy here. Now you got the direction. Follow it. Clear?" Defense counsel responded affirmatively.

During defense counsel's opening remarks, he told the jury that defendant's intent when she took the children was to keep them away from Bohanan. The prosecutor objected, and the court told defense counsel that he was "getting in too close to the area that I already forewarned you about." Defense counsel then explained to the jury that defendant needed to hide "for fear of what [Bohanan] would do." The prosecutor objected. Defense counsel retorted, "I haven't said anything about child abuse." The court instructed the jurors to strike that comment from their minds.

---

[1] The first indictment alleges that defendant committed custodial interference in the first degree by knowingly keeping the younger child from her lawful custodian between May 4, 1989, and October 24, 1989. The second indictment is similar, except that it refers instead to the older child. Both indictments are dated October 27, 1989.

On direct examination, defendant testified that she did not show Bohanan her custody papers before taking the children "[b]ecause to do so would have been dangerous." The prosecutor objected and asked to be heard. After hearing argument outside the presence of the jury, the court ruled that the testimony was admissible, because defendant had not indicated whether the danger she feared was to the children or to herself. However, the court warned, "she's putting herself in a position of being in contempt if she talks about danger to the children. I think she understands it." The following colloquy then occurred between the court and defendant:

"THE COURT:   I take it you understand?

"[Defendant]:   No, I do not understand that. You are allowing us to talk about danger to myself but I can't talk about danger to the children?

"THE COURT:   Right.

"[Defendant]:   Okay.

"THE COURT:   Clear?

"[Defendant]:   Yes.

"THE COURT:   * * * I think it is pretty clear * * * by now that your defense that you are trying to raise with regard to the children is totally out, period. No mention. Clear."

The jury returned.

Later in his direct examination, defense counsel asked defendant why she left Arizona with the children. Defendant answered, "the safety of the children."

The prosecutor objected. The objection was sustained, and the jury was told to disregard defendant's answer. The prosecutor then moved for a mistrial. A hearing was held outside the presence of the jury:

"THE COURT:   You heard what I said just a few minutes earlier?

"[Defendant]:   "Yes.

"THE COURT: You totally disregarded it. And I notice[d] when I got through telling you what you had to watch for you gave me a look of utter contempt."

"[Defendant]:   I am not sure what terminology I am allowed to use to describe.

"[THE COURT: I can't believe—you are an intelligent enough person to know just exactly what I said to you. Mistrial will be granted."

Defendant was brought to trial a second time. She moved to dismiss on the ground that former jeopardy barred the second trial. The court held that the mistrial was granted in the first trial for manifest necessity, and denied defendant's motion to dismiss. Evidence of abuse of the children by Bohanan and Bounds was again excluded. A jury found defendant guilty of both counts, and judgment was entered on the verdict.

We first address defendant's contention that the trial court erred by denying her motion to dismiss on the ground that former jeopardy bars this prosecution.

■    There is no dispute that jeopardy attached at the first trial. Article I, section 12, of the Oregon Constitution provides that "[n]o person shall be put in jeopardy twice for the same offence." However, a former prosecution does not bar retrial if the state meets its burden of showing that a mistrial was granted for manifest necessity. *State v. Cole*, 286 Or 411, 595 P2d 466, *cert den* 444 US 968 (1979).[2]

■    At the first trial, defendant deliberately and repeatedly sought to undermine the court's pretrial ruling, and eventually circumvented it. It is essential to the judicial process that the parties obey the trial court's rulings. On these facts, we conclude that the motion for mistrial was

---

[2] ORS chapter 131 affords a similar protection. ORS 131.515(1) provides that, except as provided in ORS 131.525 and ORS 131.535, "[n]o person shall be prosecuted twice for the same offense." ORS 131.525 provides that:

"(1) A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was properly terminated under any of the following circumstances:

"* * * * *

"(b) The trial court finds that termination, other than by judgment of acquittal, is necessary because:

"* * * * *

"(C) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either defendant or the state[.]"

Although defendant cites that statute, her argument relies solely on constitutional jurisprudence. She does not argue that ORS 131.515 affords her any greater protection than the Oregon Constitution.

granted for manifest necessity. The former prosecution, therefore, did not bar defendant's retrial.

Defendant also assigns error to the court's ruling excluding evidence of abuse of the children. She argues that the evidence was relevant to rebut the state's proof that she knew she was keeping the children without legal right.

Proffered evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. OEC 401. As the Supreme Court recently noted, the proper inquiry is: " 'Does the item of evidence even slightly increase or decrease the probability of the existence of any material fact in issue? If the item of evidence affects the balance of probabilities to any degree, it is logically relevant.' " *State v. Hampton*, 317 Or 251, 254-55, 855 P2d 621 (1993) (quoting *State v. Gailey*, 301 Or 563, 567, 725 P2d (1986)).

A person commits custodial interference in the first degree, ORS 163.257, by committing custodial interference in the second degree under aggravating circumstances. A person commits custodial interference in the second degree if,

> "knowing or having reason to know that the person has no legal right to do so, the person takes, entices or keeps another person from the other person's lawful custodian[.]" ORS 163.245(1).

The state was required to prove that defendant knew or had reason to know that she had no legal right to custody of her grandchildren. The state's closing argument expressly urged the jury to infer from her flight that defendant knew that she lacked custody. By contending that defendant's flight was motivated by knowledge that she had no legal right to custody of the children, the state made defendant's motive for fleeing an issue in the case. The excluded evidence was relevant, because it provides an alternative explanation for why defendant tried to keep the children hidden from Bohanan and Bounds. The trial court erred by

excluding the evidence.[3] On this record, we are unwilling to say that the error was harmless.

We need not address defendant's remaining assignments of error.

Reversed and remanded for a new trial.

---

[3] The state does not argue that the evidence was properly excluded on any ground other than its relevance. OEC 401.